# Exhibit C

# Exhibit C.1

Filed
10 July 27 P1:09
Gary Fitzsimmons
District Clerk
Dallas District

CAUSE NO. DC-10-09133

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., TUNSTALL DISTRESSED OPPORTUNITIES FUND, L.P. f/k/a DUGABOY, L.P., HIGHLAND CREDIT OPPORTUNITIES CDO, LTD., LONGHORN CREDIT FUNDING, LLC, HIGHLAND OFFSHORE PARTNERS, L.P., and TUNSTALL DISTRESSED OPPORTUNITIES MASTER FUND, LP,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>Defendant. | § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT<br><br><br><br><br><br><br><br>DALLAS COUNTY, TEXAS<br><br><br><br><br><br>J-191ST JUDICIAL DISTRICT |

### PLAINTIFFS' ORIGINAL PETITION & REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Highland Capital Management, L.P., Tunstall Distressed Opportunities Fund, L.P. f/k/a Dugaboy, L.P., Highland Credit Opportunities CDO, Ltd., Longhorn Credit Funding, LLC, Highland Offshore Partners, L.P., and Tunstall Distressed Opportunities Master Fund, LP file this Original Petition and Request for Disclosure (this "Petition") complaining of Defendant Bank of America, National Association, and respectfully state as follows:

### I. DISCOVERY CONTROL PLAN

1.  Plaintiffs request that discovery be conducted pursuant to Discovery Control Plan Level 2.

## II. PARTIES

2. Plaintiff Highland Capital Management, L.P. ("Highland") is a Delaware limited partnership with its principal office in Dallas County.

3. Plaintiff Tunstall Distressed Opportunities Fund, L.P. f/k/a Dugaboy, L.P. ("Tunstall") is a Delaware limited partnership with its principal office in Dallas County.

4. Plaintiff Highland Credit Opportunities CDO, Ltd. ("Credit Opportunities") is an exempted company incorporated with limited liability under the laws of the Cayman Islands with its principal office in Dallas County.

5. Plaintiff Longhorn Credit Funding, LLC ("Longhorn Credit") is a Delaware limited liability company with its principal office in Dallas County.

6. Plaintiff Highland Offshore Partners, L.P. ("Offshore Partners") is a Bermuda exempted limited partnership with its principal office in Dallas County.

7. Plaintiff Tunstall Distressed Opportunities Master Fund, LP ("Tunstall Master Fund") is an exempted limited partnership organized under the laws of the Cayman Islands with its principal office in Dallas County. On or about May 6, 2010, Tunstall Master Fund acquired an interest in the transaction set forth in this Petition from another of Highland's managed funds, Republic Loan Funding, Ltd.

8. Tunstall, Credit Opportunities, Longhorn Credit, Offshore Partners, and Tunstall Master Fund may collectively be referred to as the "Managed Funds." The Managed Funds are managed by, or affiliated with, Highland. Highland, collectively with the Managed Funds, may be referred to as the "Plaintiffs."

9. Defendant Bank of America, National Association ("BofA") is a national financial institution doing business in the State of Texas. BofA may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

### III. JURISDICTION AND VENUE

10. Venue is proper in Dallas County pursuant to TEX. CIV. PRAC. & REM. CODE §§ 15.002(a)(1) & (4). A substantial part of the events and omissions giving rise to this claim occurred in this County. Further, BofA's principal office is not in this State, and Plaintiffs resided in this County at the time of the accrual of the causes of action asserted herein. Plaintiffs seek damages in excess of the minimum jurisdictional limit of this Court.

### IV. STATEMENT OF FACTS

**A. The Regency Loan Transaction**

11. On or about November 20, 2009, an employee of investment bank Houlihan Lokey ("HL") informed Highland that BofA was offering to sell its interest in that certain *Amended and Restated Credit Agreement dated as of July 31, 2009, among Regency Hospitals, LLC, as Borrower, the other Credit Parties referred to therein, the Lenders referred to therein, CIT Healthcare LLC as Administrative Agent, and CIT Capital Securities LLC, as Lead Arranger and Book Runner* (the "Regency Loan"). HL stated that BofA would sell its interest in the Regency Loan to Highland for a price of 93.5% of par. By an email on the same date, Highland confirmed to HL its desire to purchase BofA's interest in the Regency Loan at a price of 93.5% of par.

12. By an email on December 3, 2009, Highland accepted BofA's prior offer by directly communicating to BofA that Highland agreed to purchase $15,500,000 of the Regency Loan from BofA. Pursuant to a return email that same day, BofA's employee confirmed the parties' agreement, stating only that it was "subject to appropriate consents and documentation." According to the parties' conduct and standard industry practice, Highland and BofA had a binding, enforceable agreement by at least December 3, 2009, for the purchase and sale of $15,500,000.00 of the Regency Loan at a price of 93.5% of par.

13. Highland intended to purchase the Regency Loan for distribution to certain of the Managed Funds. Although the Regency Loan transaction never settled because of BofA's breach, the Managed Funds may constitute the real parties in interest to the claims and causes of action asserted herein against BofA. This Petition is filed by Highland and the Managed Funds as the Plaintiffs herein.

**B.   BofA Demands Non-Industry Standard Terms**

14. Subsequent to the December 3, 2009, agreement between Highland and BofA, BofA demanded that Highland agree to accept terms that materially varied from industry standards. BofA, however, could not permissibly demand such terms from Highland, as the agreement entered into between the parties on December 3rd incorporated the Standard Terms and Conditions for Par/Near Par Trade Confirmations published by the Loan Syndications and Trading Association, Inc. as of September 25, 2009 (the "LSTA Standard Terms"). Further, the parties had already agreed to the material terms of the transaction, subject only to standard documentation.

15. When parties enter into a bank or commercial debt transaction and execute a confirmation incorporating the LSTA Standard Terms, the LSTA Standard Terms govern not only the parties' dealings in the specific transaction that is the subject of the signed trade confirmation, but also subsequent transactions between them involving the purchase or sale of par or near par commercial or bank loans. Relevant here, paragraph 21 of the LSTA Standard Terms provides:

> **Binding Effect:** By execution of a Confirmation incorporating by reference the Standard Terms and Conditions, each of Buyer and Seller agrees to be legally bound to any other transaction between them (whether entered into before, on or after the Trade Date) with respect to the assignment, purchase, sale and/or participation of commercial and/or bank par/near par loans, or any interest therein, upon reaching agreement to the terms thereof (whether by telephone, exchange or electronic messages or otherwise, directly or through their respective agents, and whether the subject of a confirmation), subject to all the other terms and conditions set forth in any confirmation relating to such transaction, or otherwise agreed. Each of Buyer and Seller further agrees that any such transaction shall be governed by and construed in accordance with the laws of the State of New York, without regard to any conflicts of law provisions that would require the application of the laws of any other jurisdiction.
>
> . . .
>
> Each of Buyer and Seller shall record on the trade date of each transaction between the parties and retain in its files a written or electronically recorded trade ticket or similar internal record containing or reflecting evidence of agreement to such transaction, including (a) the date of the agreement, (b) a description of the type of debt including obligor(s) and purchase amount, (c) the identity of the other party to the transaction, and (d) the purchase price or purchase rate.

16. On October 26, 2009, BofA entered into that certain LSTA Par/Near Par Trade Confirmation for the purchase of debt of Oxbow Carbon, LLC (the "Oxbow Trade Confirmation"). Pursuant to the Oxbow Trade Confirmation, BofA purchased $3,131,110.65 of a certain term loan of Oxbow Carbon, LLC, and $298,667.08 of another

certain term loan of Oxbow Carbon, LLC, from Republic Loan Funding, Ltd., a fund managed by Highland.

17. The Oxbow Trade Confirmation expressly incorporated the LSTA Standard Terms. The Oxbow Trade Confirmation was executed by a Principal of BofA. Highland executed the Oxbow Trade Confirmation as Collateral Manager for Republic Loan Funding, Ltd., the seller.

18. On November 2, 2009, BofA entered into that certain LSTA Par/Near Par Trade Confirmation for the purchase of debt of Cequel Communications, LLC (the "Cequel Trade Confirmation"). Pursuant to the Cequel Trade Confirmation, BofA purchased $2,000,000.00 of a certain term loan of Cequel Communications, LLC from Grayson, CLO, Ltd., a limited partnership managed by Highland.

19. The Cequel Trade Confirmation expressly incorporated the LSTA Standard Terms. The Cequel Trade Confirmation was executed by a Principal of BofA. Highland executed the Cequel Trade Confirmation as Collateral Manager for Grayson, CLO, Ltd., the seller.

20. Pursuant to the Oxbow Trade Confirmation and the Cequel Trade Confirmation, BofA was contractually bound by the LSTA Standard Terms in its future dealings with Highland and its managed funds. The Regency Loan transaction was for the purchase and sale of a near par commercial loan. Accordingly, BofA's agreement to sell the Regency Loan to Highland was binding upon the parties' reaching an agreement to the material terms thereof: the date of the transaction, the description of the debt, the purchase amount, and the purchase rate. Although BofA's confirmation email to Highland stated that the agreement was subject to "appropriate consents and

documentation," the consents and documentation were constrained by the LSTA Standard Terms, and any terms that deviated from the LSTA Standard Terms were required to be expressly reserved in BofA's email confirmation of the trade.

21. Subsequent to the December 3rd agreement, BofA demanded additional, non-standard terms to be included in the final trade documentation before BofA would comply with its obligation to sell its interest in the Regency Loan. More specifically, BofA demanded, among other things, that the Plaintiffs agree to indemnify BofA for any failure of the borrower or agent to consent to the transaction, that Plaintiffs pay for all legal fees associated with preparation of the loan sale and assignment agreement and agree to reimburse BofA for legal expenses even after the closing of the transaction, and that Plaintiffs waive all legal claims against BofA. BofA's required condition precedents deviated from industry standard and the LSTA Standard Terms and were not expressly reserved in BofA's email trade confirmation.

22. Presently, the Regency Loan trades at 100% of par. Upon information and belief, prior to or during the course of the negotiations to settle the Regency Loan transaction, BofA became aware of information that would cause the Regency Loan to rise in value. Based upon this knowledge, upon information and belief, BofA failed to negotiate in good faith to settle the transaction with Plaintiffs in order to scuttle the deal and capture this profit for itself. BofA has also impermissibly received all interest payments on the Regency Loan since the date of its breach.

## V. CAUSES OF ACTION

### Count One:  Breach of Contract

23. Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Petition as if fully set forth herein.

24. On December 3, 2009, Highland agreed to purchase the amount of $15,500,000.00 of the Regency Loan at a price of 93.5% of par. BofA also agreed to these material and binding terms pursuant to a return email on the same date. BofA's agreement did not expressly reserve any conditions that deviated from the LSTA Standard Terms for such transactions.

25. The December 3rd agreement was a binding contract that required BofA to settle the transaction to sell the Regency Loan to the Plaintiffs on the material terms confirmed by the parties. The agreement was binding as a matter of express contract, as the parties' email confirmation incorporated the LSTA Standard Terms and set forth the requisite material terms of the transaction: (a) date, (b) description of the debt and purchase amount, (c) identity of the counterparty, and (d) purchase rate.

26. The December 3rd agreement was also binding as a matter of common law, as the parties mutually assented to the material terms of the contract and there were no essential terms left open. Moreover, under applicable industry standards of practice, the email confirmations between the parties established a binding, enforceable agreement between BofA and the Plaintiffs.

27. Alternatively, the December 3rd agreement created a preliminary agreement that required the parties to negotiate the final contractual documents in good faith.

28. The Plaintiffs fully performed their contractual obligations.

29. BofA materially breached its agreement to sell the Regency Loan by demanding additional conditions to its performance that were not a part of the binding agreement or standard industry terms. Alternatively, BofA materially breached the preliminary agreement by failing to negotiate a settlement of the transaction in good faith.

30. BofA's breach caused injury to the Plaintiffs and has resulted in damages.

31. Plaintiffs seek damages that are within the jurisdictional limits of this Court.

### Count Two: Promissory Estoppel

32. Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Petition as if fully set forth herein.

33. In the alternative to Count One, BofA made a promise to the Plaintiffs that BofA did not keep.

34. BofA promised to the Plaintiffs that BofA would settle a transaction in accordance with the parties' email confirmation of the material terms of the trade. The Plaintiffs reasonably and substantially relied on BofA's promise to their detriment.

35. The Plaintiffs' reliance on BofA's promise was foreseeable by BofA. Injustice can be avoided only by enforcing BofA's promise.

36. BofA's acts and omissions give rise to a claim for promissory estoppel under applicable law.

### VI. CONDITIONS PRECEDENT

37. All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## VII. DEMAND FOR JURY

38. Plaintiffs demand a jury trial and tender the appropriate fee with this Petition.

## VIII. REQUEST FOR DISCLOSURE

39. Under TEX. R. CIV. P. 194, Plaintiffs request that BofA disclose, within 50 days of service of this request, the information or material described in Rule 194.2.

## IX. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that BofA be cited to appear and answer herein, and that upon trial of this cause, judgment be entered in their favor, and against BofA for the following:

a. actual, compensatory, consequential, and all other damages in an amount that exceeds the minimum jurisdictional limit of this Court;

b. specific performance of the contract at issue in this proceeding;

c. pre-judgment and post-judgment interest at the highest rate allowed by law;

d. attorneys' fees;

e. costs of court;

f. all such further relief to which Plaintiffs are entitled at law and in equity.

DATED: July 27, 2010

        Respectfully submitted,

        REID DAVIS LLP
        4301 Westbank Drive
        Suite B-230
        Austin, Texas 78746
        (512) 647-6100 Ph.
        (512) 647-6129 Fx.

        By: *C. Randall Carr*
        William T. Reid, IV
        Texas Bar No. 00788817
        C. Randall Carr
        Texas Bar No. 24012391
        Sumit R. Shah
        Texas Bar No. 24072337

        *Attorneys for Plaintiffs*

# CIVIL CASE INFORMATION SHEET

**CAUSE NUMBER** *(FOR CLERK USE ONLY):* DC-10-09133-J    **COURT** *(FOR CLERK USE ONLY):* _____

**STYLED** _____
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment motion for modification or enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

## 1. Contact information for person completing case information sheet:

**Name:** C. Randall Carr
**Email:** rcarr@rekldavis.com
**Address:** 4301 Westbank Drive, Building B, Suite 230
**Telephone:** (512) 647-6100
**City/State/Zip:** Austin, TX 78746
**Fax:** 512-647-6129
**Signature:** C. Randell Carr
**State Bar No:** TX 24012391

## Names of parties in case:

**Plaintiff(s)/Petitioner(s):**
Highland Capital Management, L.P.
Tunstall Distressed Opportunities Fund, L.P., f/k/a Dugaboy, L.P.
Highland Credit Opportunities CDO, Ltd.

**Defendant(s)/Respondent(s):**
Bank of America, National Association

[Attach additional page as necessary to list all parties]

## Person or entity completing sheet is:
[✓] Attorney for Plaintiff/Petitioner
[ ] *Pro Se* Plaintiff/Petitioner
[ ] Title IV-D Agency
[ ] Other: _____

**Additional Parties in Child Support Case:**
Custodial Parent:
Non-Custodial Parent:
Presumed Father:

## 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

### Civil

**Contract — Debt/Contract**
[ ] Consumer/DTPA
[✓] Debt/Contract
[ ] Fraud/Misrepresentation
[ ] Other Debt/Contract: _____

*Foreclosure*
[ ] Home Equity—Expedited
[ ] Other Foreclosure
[ ] Franchise
[ ] Insurance
[ ] Landlord/Tenant
[ ] Non-Competition
[ ] Partnership
[ ] Other Contract: _____

**Injury or Damage**
[ ] Assault/Battery
[ ] Construction
[ ] Defamation
*Malpractice*
[ ] Accounting
[ ] Legal
[ ] Medical
[ ] Other Professional Liability: _____
[ ] Motor Vehicle Accident
[ ] Premises
*Product Liability*
[ ] Asbestos/Silica
[ ] Other Product Liability
List Product: _____
[ ] Other Injury or Damage: _____

**Real Property**
[ ] Eminent Domain/Condemnation
[ ] Partition
[ ] Quiet Title
[ ] Trespass to Try Title
[ ] Other Property: _____

**Related to Criminal Matters**
[ ] Expunction
[ ] Judgment Nisi
[ ] Non-Disclosure
[ ] Seizure/Forfeiture
[ ] Writ of Habeas Corpus—Pre-indictment
[ ] Other: _____

**Employment**
[ ] Discrimination
[ ] Retaliation
[ ] Termination
[ ] Workers' Compensation
[ ] Other Employment: _____

**Other Civil**
[ ] Administrative Appeal
[ ] Antitrust/Unfair Competition
[ ] Code Violations
[ ] Foreign Judgment
[ ] Intellectual Property
[ ] Lawyer Discipline
[ ] Perpetuate Testimony
[ ] Securities/Stock
[ ] Tortious Interference
[ ] Other: _____

### Family Law

**Marriage Relationship**
[ ] Annulment
[ ] Declare Marriage Void
*Divorce*
[ ] With Children
[ ] No Children

**Other Family Law**
[ ] Enforce Foreign Judgment
[ ] Habeas Corpus
[ ] Name Change
[ ] Protective Order
[ ] Removal of Disabilities of Minority
[ ] Other: _____

**Post-judgment Actions (non-Title IV-D)**
[ ] Enforcement
[ ] Modification—Custody
[ ] Modification—Other

**Title IV-D**
[ ] Enforcement/Modification
[ ] Paternity
[ ] Reciprocals (UIFSA)
[ ] Support Order

**Parent-Child Relationship**
[ ] Adoption/Adoption with Termination
[ ] Child Protection
[ ] Child Support
[ ] Custody or Visitation
[ ] Gestational Parenting
[ ] Grandparent Access
[ ] Paternity/Parentage
[ ] Termination of Parental Rights
[ ] Other Parent-Child: _____

### Tax
[ ] Tax Appraisal
[ ] Tax Delinquency
[ ] Other Tax

### Probate & Mental Health

*Probate/Wills/Intestate Administration*
[ ] Dependent Administration
[ ] Independent Administration
[ ] Other Estate Proceedings

[ ] Guardianship—Adult
[ ] Guardianship—Minor
[ ] Mental Health
[ ] Other: _____

## 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:

[ ] Appeal from Municipal or Justice Court
[ ] Arbitration-related
[ ] Attachment
[ ] Bill of Review
[ ] Certiorari
[ ] Class Action
[ ] Declaratory Judgment
[ ] Garnishment
[ ] Interpleader
[ ] License
[ ] Mandamus
[ ] Post-judgment
[ ] Prejudgment Remedy
[ ] Protective Order
[ ] Receiver
[ ] Sequestration
[ ] Temporary Restraining Order/Injunction
[ ] Turnover

Civil Case Information Sheet Addendum

**Additional Names of Plaintiffs in Case:**

Longhorn Credit Funding, LLC

Highland Offshore Partners, L.P.

Tunstall Distressed Opportunities Master Fund, LP

**STATE OF TEXAS** }
**COUNTY OF DALLAS** }

I, GARY FITZSIMMONS, Clerk of the District of Dallas County, Texas, do hereby certify that I have compared this instrument to be a true and correct copy of the original as appears of record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Dallas, Texas, this 10th day of August, A.D., 2010.

GARY FITZSIMMONS, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By _Cecelia Flower_ Deputy