## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P., TUNSTALL DISTRESSED OPPORTUNITIES FUND, L.P. f/k/a DUGABOY, L.P., HIGHLAND CREDIT OPPORTUNITIES CDO LTD., LONGHORN CREDIT FUNDING LLC, HIGHLAND OFFSHORE PARTNERS, L.P., and TUNSTALL DISTRESSED OPPORTUNITIES MASTER FUND, LP,** | § § § § § § § § § | |
| | § | **Civil Action No. 3:10-CV-1632-L** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **BANK OF AMERICA, NATIONAL ASSOCIATION,** | § § § | |
| **Defendant.** | § § | |

### PLAINTIFFS' RESPONSE TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS AND BRIEF IN SUPPORT

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... iii

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS .......................................................................... 2

    A.   Highland And BofA Entered Into A Binding And Enforceable
        Agreement For The Sale And Purchase Of The Regency Loan. ........................ 3

    B.   BofA Breached The Contract With Highland By Demanding That Highland
        Accept Additional Non-Industry Standard Terms Before BofA Would
        Settle The Trade. ............................................................................... 4

III. LEGAL ARGUMENT & AUTHORITIES ..................................................... 7

    A.   A Rule 12(b)(6) Motion To Dismiss Cannot Be Used To Dispute The
        Factual Evidence Of Contract Formation. ............................................... 7

    B.   The Facts Alleged In The Complaint Establish A Binding Contract And
        BofA's Breach Of That Contract. ........................................................ 9

        1.   The Facts Alleged In The Complaint Establish A Binding Agreement
            Between Highland And BofA Under The LSTA Standard Terms. ......... 10

        2.   The Facts Alleged In The Complaint Establish A Binding Agreement
            Between Highland And BofA Under New York Common Law. ............. 13

            a.   Higland And BofA Had A Binding Contract Under New York
                Law.. ..................................................................... 13

            b.   At A Minimum, BofA Breached Its Duty To Negotiate The
                Final Settlement Terms in Good Faith. ....................................... 136

        3.   The Facts Alleged In The Complaint Establish A Binding Agreement
            Between Highland And BofA Under Texas Common Law. .................... 18

        4.   The Facts Alleged In The Complaint Establish That BofA Breached
            Its Agreement. ............................................................... 19

    C.   Highland Has More Than Sufficiently Pled Facts To Establish A Claim For
        Promissory Estoppel. ....................................................................... 20

    D.   Highland Will Amend The Complaint To Remove The Managed Funds As
        Party Plaintiffs. ............................................................................. 21

IV.  CONDITIONAL REQUEST FOR LEAVE  TO AMEND THE COMPLAINT.................. 22

V.   CONCLUSION AND PRAYER ........................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007)..................................................................................... 8

*Brown v. Cara*
  420 F.3d 148 (2d Cir. 2005).................................................................. 14, 16

*Collins v. Morgan Stanley Dean Witter*
  224 F.3d 496 (5th Cir. 2000) ...................................................................... 8

*Cyberchron Corp. v. Calldata Sys. Dev't, Inc.*
  47 F.3d 39 (2d Cir. 1995)............................................................................ 20

*Ellis v. Liberty Life Assurance Co. of Boston*
  394 F.3d 262 (5th Cir. 2004) ...................................................................... 22

*English v. Fischer*
  660 S.W.2d 521 (Tex. 1983)........................................................................ 20

*Foreca, S.A. v. GRD Dev't Co.*
  758 S.W.2d 744 (Tex. 1988)................................................................... 18, 19

*H.L. Scott v. Ingle Bros. Pac., Inc.*
  489 S.W.2d 554 (Tex. 1972)........................................................................ 19

*IDT Corp. v. Tyco Group*
  918 N.E.2d 913  (N.Y. 2009)....................................................................... 14

*In re Katrina Canal Breaches Lit.*
  495 F.3d 191 (5th Cir. 2007) ........................................................................ 8

*JP Morgan Chase v. J.H. Elec. of New York, Inc.*
  893 N.Y.S.2d 237 (N.Y. App. Div. 2010) ............................................... 10

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*
  594 F.3d 383 (5th Cir. 2010) ........................................................................ 8

*Rice v. Metropolitan Life Ins. Co.*
  324 S.W. 3d 660 (Tex. App. —-Fort Worth, 2010).................................. 10

*S&W Enter., L.L.C. v. Southtrust Bank of Ala.*
  315 F.3d 533 (5th Cir. 2003) ...................................................................... 23

*Scanlan v. Texas A&M Univ.*
   343 F.3d 533 (5th Cir. 2003) ................................................................... 8, 9

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*
   847 S.W.2d 218 (Tex. 1992) ..................................................................... 18

*Teachers Ins. and Annuity Assoc. v. Tribune Co.*
   670 F.Supp. 491 (S.D.N.Y. 1987) ........................................................... 16

*Whitmire v. Victus Ltd. T/A Master Design Furn.*
   212 F.3d 885 (5th Cir. 2000) ................................................................... 22

*Winston v. Mediafare Entertainment Corp.*
   777 F.2d 78 (2d Cir. 1986)................................................................. 14, 16

## Statutes

Fed. R. Civ. P. 15(a) .................................................................................... 22

Fed. R. Civ. P. 8(a)(2)..................................................................................... 7

N.Y. Gen. Oblig. Law § 5-701(b)(2)(i) (2002)........................................... 11

Plaintiffs Highland Capital Management, L.P. ("Highland"),[1] Tunstall Distressed Opportunities Fund, L.P. f/k/a Dugaboy, L.P., Highland Credit Opportunities CDO, Ltd., Longhorn Credit Funding, LLC, Highland Offshore Partners, L.P., and Tunstall Distressed Opportunities Master Fund, LP file this Response and Brief in Support (this "Response") to Defendant Bank of America, N.A.'s Motion to Dismiss and Brief in Support (the "Motion to Dismiss") and respectfully state as follows:

## I.    INTRODUCTION

The well-pled allegations of the complaint establish the existence of a binding contract between Highland and Defendant Bank of America, N.A. ("BofA"), and BofA's subsequent breach of that agreement.  On each of October 26, 2009 and November 2, 2009, Highland and BofA executed written trade confirmations that incorporated the parties' mutual agreement that:

> [E]ach of [BofA] and [Highland] agrees to be legally bound to any other transaction between them . . . whether entered into . . . on or after the Trade Date . . . with respect to the assignment, purchase, sale and/or participation of commercial and/or bank par/near par loans . . . upon reaching agreement to the terms thereof whether by telephone, exchange or electronic messages or otherwise . . .

On December 3, 2009, Highland and BofA reached agreement to the terms of the subject purchase and sale of a bank near par loan.  As specifically alleged in the complaint, at the time of the agreement, BofA did not require the inclusion of any non-industry standard terms as a condition to the enforceability of the contract.  Under the plain language set forth above, BofA

---

[1]    As discussed in section III, D., *infra*, concurrently with the filing of this Response, Plaintiffs are filing an *Agreed Stipulation of Dismissal as to Certain Plaintiffs*, dismissing, without prejudice, the Managed Funds (as defined in the Complaint), as party plaintiffs in this proceeding.  The filing of the stipulation leaves Highland as the only remaining plaintiff in this proceeding.

was *"legally bound"* upon *"reaching agreement to the terms"* of the transaction.   Before closing the sale, however, BofA demanded that Highland accept additional, material, non-industry standard terms as a condition to the trade.   Highland rightfully refused to accept such additional conditions.

BofA's Rule 12(b)(6) motion to dismiss challenges the factual underpinnings of the parties' agreement.    Namely, BofA presents its own characterization of the parties' communications in an attempt to sway this Court to the conclusion that the parties had not, in fact, "reached agreement to the terms" of the trade.   BofA's motion requires this Court to, *first,* disregard Highland's allegations regarding the parties' communications and intent, and, *second*, accept BofA's inferences to be drawn from those communications.   One-sided and incomplete presentations of facts, however, are not properly considered on a motion to dismiss.   At this stage, the Court is required to accept Highland's well-pled allegations as true and in the light most favorable to Highland.   Highland's complaint plainly satisfies the relevant Rule 12(b)(6) pleading standards, and thus BofA's motion must be denied.

## II.    STATEMENT OF FACTS

Highland asserts that the allegations of the Complaint, taken as true, establish (1) the existence of a binding agreement between Highland and Defendant Bank of America, N.A. ("BofA") and (2) the subsequent breach of that agreement by BofA that (3) proximately caused financial damages to Highland.   The following facts are taken from the factual allegations of *Plaintiffs' Original Petition and Request for Disclosure* (the "Complaint"):[2]

---

[2]        Plaintiffs initiated this proceeding in the District Court of Dallas County, Texas on July 27, 2010.   On August 20, 2010, Defendant BofA filed a *Notice of Removal* to transfer the case into this Court.   For the sake of consistency in this federal court proceeding, Highland shall refer to the *Original Petition* as the "Complaint."

**A.**   **Highland And BofA Entered Into A Binding And Enforceable Agreement For The Sale And Purchase Of The Regency Loan.**

On or about November 20, 2009, an employee of investment bank Houlihan Lokey ("HL") informed Highland that BofA was offering to sell its interest in that certain *Amended and Restated Credit Agreement dated as of July 31, 2009, among Regency Hospitals, LLC, as Borrower, the other Credit Parties referred to therein, the Lenders referred to therein, CIT Healthcare LLC as Administrative Agent, and CIT Capital Securities LLC, as Lead Arranger and Book Runner* (the "Regency Loan").[3]   HL stated that BofA would sell its interest in the Regency Loan to Highland for a price of 93.5% of par, and Highland confirmed to HL its desire to purchase the Regency Loan on such terms.[4]

By an email on December 3, 2009, Highland accepted BofA's prior offer by directly communicating to BofA that Highland agreed to purchase $15,500,000 of the Regency Loan from BofA.[5]   Pursuant to a return email that same day, BofA's employee confirmed the parties' agreement.[6]   According to the LSTA Standard Terms (as defined herein), standard industry practice, and the parties' prior conduct, Highland and BofA reached a binding, enforceable

---

[3]   Complaint, ¶ 11.

[4]   *Id.*   It is noted that Highland's proposed First Amended Complaint supplements these allegations by asserting that, prior to the exchange of referenced emails, a phone call between agents for Highland and BofA established the existence of a binding agreement under the LSTA Standard Terms for the purchase and sale of the Regency Loan.   On that phone call, BofA failed to reserve any additional, non-industry standard terms as a condition to closing the transaction.

[5]   *Id.,* ¶ 12.   The email from Highland to BofA referenced in the Complaint details the material terms of the transaction and states that "[w]e are now done on this trade subject to agent and borrower consents," that BofA should "complete trade confirms today," and that the transaction "must settle before yearend."   *See* Motion to Dismiss, Ex. A.

[6]   *Id.*   The return email from BofA referenced in the Complaint gives Highland the contact information of the BofA employee who "will handle the closing for Bank of America" and states that the settlement of the transaction is "subject to appropriate consents and documentation."   *See* Motion to Dismiss, Ex. B.

agreement on December 3, 2009, for the purchase and sale of $15,500,000.00 of the Regency Loan at a price of 93.5% of par.[7]

**B.**     **BofA Breached The Contract With Highland By Demanding That Highland Accept Additional Non-Industry Standard Terms Before BofA Would Settle The Trade.**

Subsequent to the December 3, 2009, agreement between Highland and BofA, BofA breached the parties' contract by refusing to close the trade unless Highland would agree to accept trade terms that materially varied from industry standards.[8]  BofA, however, could not permissibly demand such terms from Highland, as the agreement entered into between the parties on December 3rd expressly incorporated the Standard Terms and Conditions for Par/Near Par Trade Confirmations published by the Loan Syndications and Trading Association, Inc. as of September 25, 2009 (the "LSTA Standard Terms").[9]  Further, the parties had already agreed to the material terms of the transaction, subject only to standard documentation.[10]

Prior to the Regency Loan transaction at issue in this proceeding, Highland and BofA had executed at least two separate trade confirmation agreements that incorporated the LSTA Standard Terms.[11]  Once trade counterparties enter into a single executed trade confirmation that incorporates the LSTA Standard Terms, then all future dealings between the parties are governed

---

[7]      *Id.*

[8]      *Id.*, ¶ 14.

[9]      *Id.*

[10]      *Id.*

[11]      *Id.*, ¶¶ 16-19.  In its Motion, BofA asserts that the two earlier trade confirmations referenced in Plaintiffs' Complaint were entered into by a separate entity, Banc of America Securities.  *See* Motion at 3, n.2.  Both trade confirmations that are referenced in the Complaint were executed by "**Bank of America, N.A.**," and "**Bank of America, N.A.**" is listed as the counterparty on each trade confirmation.  BofA's assertion that it is not bound by these earlier trade confirmations is unfounded.

by, and expressly incorporate, the LSTA Standard Terms.[12]   More specifically, paragraph 21 of

the LSTA Standard Terms provides:

> **Binding Effect:**  By execution of a Confirmation incorporating by reference the Standard Terms and Conditions, ***each of Buyer and Seller agrees to be legally bound to any other transaction between them*** (whether entered into before, on or after the Trade Date) with respect to the assignment, purchase, sale and/or participation of commercial and/or bank par/near par loans, or any interest therein, upon reaching agreement to the terms thereof (***whether by telephone, exchange or electronic messages or otherwise***, directly or through their respective agents, and whether the subject of a confirmation), subject to all the other terms and conditions set forth in any confirmation relating to such transaction, or otherwise agreed.  Each of Buyer and Seller further agrees that any such transaction shall be governed by and construed in accordance with the laws of the State of New York, without regard to any conflicts of law provisions that would require the application of the laws of any other jurisdiction.
>
> . . .
>
> Each of Buyer and Seller shall record on the trade date of each transaction between the parties and retain in its files a written or electronically recorded trade ticket or similar internal record containing or reflecting evidence of agreement to such transaction, including (a) the date of the agreement, (b) a description of the type of debt including obligor(s) and purchase amount, (c) the identity of the other party to the transaction, and (d) the purchase price or purchase rate.[13]

The LSTA Standard Terms thus expressly provide that parties are "***legally bound***" by

phone calls, emails and other communications that state an agreement as to the material terms of

the trade.[14]   And, under paragraph 21, a party to a trade must reserve any non-industry standard

terms at the time the agreement is reached by phone call, email or otherwise, or else those terms

are waived and the counterparty can bring a cause of action to enforce the agreement (as

Highland has done here).[15]

---

[12]     *Id.*, ¶ 15.

[13]     *Id.* (emphasis added).

[14]     *Id.*

[15]     *Id.*

Because BofA had previously executed the Oxbow Trade Confirmation and the Cequel Trade Confirmation that incorporated the LSTA Standard Terms (both, as defined in the Complaint), BofA was contractually bound by the LSTA Standard Terms in its future dealings with Highland and its managed funds.[16] The Regency Loan transaction was for the purchase and sale of a near par commercial loan.[17]  Accordingly, BofA's agreement to sell the Regency Loan to Highland was binding upon the parties' reaching an agreement to the material terms thereof: the date of the transaction, the description of the debt, the purchase amount, and the purchase rate.[18]

Subsequent to the December 3rd agreement, BofA demanded additional, non-standard terms be included in the final trade documentation before BofA would comply with its obligation to sell its interest in the Regency Loan.[19]  More specifically, BofA demanded, among other things, that Highland agree to indemnify BofA for any failure of the borrower or agent to consent to the transaction, that Highland pay for all legal fees associated with preparation of the loan sale and assignment agreement and agree to reimburse BofA for legal expenses even after the closing of the transaction, and that Highland waive all legal claims against BofA.[20]  BofA's required conditions precedent deviated from industry standard and the LSTA Standard Terms and were not expressly reserved in BofA's phone or email trade confirmation.[21]

---

[16]     *Id.*, ¶ 20.

[17]     *Id.*

[18]     *Id.*

[19]     *Id.*, ¶ 21.

[20]     *Id.*

[21]     *Id.*

At this time, the Regency Loan has been paid off at 100% of par.[22]  Upon information and belief, prior to or during the course of the negotiations to settle the Regency Loan transaction, BofA became aware of information that would cause the Regency Loan to rise in value.[23]  Highland bases this belief upon the facts that BofA is a significant institutional player in the market for bank debt trading and has thousands of employees that are involved in most significant financial transactions in the United States and elsewhere.   Based upon BofA's knowledge that the Regency Loan would eventually be paid at 100% of par, upon information and belief, BofA failed to negotiate in good faith to settle the transaction with Highland in order to scuttle the deal and capture this profit for itself.[24]  Highland bases this belief upon the fact that BofA and its employees have an incentive to act in the bank's own financial interests, and to the extent that BofA could cancel the Regency Loan trade with Highland, then BofA would realize well in excess of $1,000,000 of profits that otherwise would go to Highland.

## III.    LEGAL ARGUMENT & AUTHORITIES

### A.    A Rule 12(b)(6) Motion To Dismiss Cannot Be Used To Dispute The Factual Evidence Of Contract Formation.

The rules of decision on a motion under Rule 12(b)(6) are well-worn, but bear repeating in response to BofA's attack on both the factual allegations of the Complaint and the light in which to cast those facts.  Rule 8 of the Federal Rules of Civil Procedure only requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to

---

[22]    Although the Complaint alleges that the Regency Loan currently trades at 100% of par, *id.*, ¶ 22, Plaintiffs have subsequently learned that the Regency Loan was paid off at 100% of par and no longer trades in the bank debt market.

[23]    *Id.*

[24]    *Id.*

relief."[25]   The allegations of the complaint must include "only enough facts to state a claim for relief that is plausible on its face."[26]   Accordingly, a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and rarely granted."[27]

The court's analysis of a motion to dismiss is constrained by two fundamental principles. First, the court must assume that all of the allegations in the complaint are true.[28]   Second, the court must view all such allegations in the light most favorable to the plaintiff.[29]   Thus the "ultimate question" in deciding a Rule 12(b)(6) motion is "whether the complaint states a valid claim when all well-pleaded facts are assumed as true and are viewed in the light most favorable to the plaintiff."[30]

In considering a motion to dismiss, the district court is limited to the contents of the pleadings and any attachments thereto.[31]   The Fifth Circuit recognizes a narrow exception to this rule, permitting the court to review documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim."[32]   Documents

---

[25]     Fed. R. Civ. P. 8(a)(2).

[26]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[27]     *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)(quotation omitted).

[28]     *Twombly*, 550 U.S. at 555-56; *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of the complaint's factual allegations.").

[29]     *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 295 (5th Cir. 2007).

[30]     *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[31]     *Collins*, 224 F.3d at 498.

[32]     *Id.* at 498-99 (quotation omitted).

that are attached to the ***defendant's*** motion, however, must still be construed in the light most favorable to the ***plaintiff***.[33]

BofA's Motion to Dismiss attempts to convince this Court to decide issues of disputed fact that are not properly before the Court on a motion to dismiss.  For example, a central, contested issue in this proceeding is whether Highland and BofA formed a binding agreement for the sale and purchase of the Regency Loan.  The determination of that issue rests upon, *inter alia*, (1) interpretation of the LSTA Standard Terms, (2) the parties' prior dealings under the LSTA Standard Terms; (3) industry standard practices in trading bank debt, (4) the parties' intent at the time of the contract, and (5) the timing and substance of the parties' communications in connection with the agreement.  Each of these points requires factual determinations that cannot be decided on the pleadings alone.

Further, BofA attaches two specific emails to its Motion and then asks this Court to interpret those emails in a manner that supports its motion to dismiss.[34]  Because both emails are referenced in the Complaint, Highland concedes that the Court likely can consider these emails in connection with the Motion to Dismiss.[35]  The Court, however, must construe these email exhibits in the light most favorable to Highland's claims, and accept Highland's assertions that the emails are consistent with a binding agreement between BofA and Highland under the LSTA Standard Terms, standard industry practice, and the parties' intent.[36]

---

[33]     *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003).

[34]     *See* Motion to Dismiss, Exs. A & B.

[35]     *See Scanlan*, 343 F.3d at 536.

[36]     *See id.*, ("Even if the Final Report fell under the *Collins* exception, the district court failed to construe the plaintiffs' factual allegations in the light most favorable to the plaintiffs.").

**B.**   **The Facts Alleged In The Complaint Establish A Binding Contract And BofA's Breach Of That Contract.**

Highland has more than sufficiently pled a cause of action for breach of contract under each of: (1) the plain language of the LSTA Standard Terms that are alleged to be binding on these parties' trading activities in par/near par bank debt transactions, (2) New York common law, and (3) Texas common law.   The requisite elements to establish a claim for breach of contract are the same under both New York and Texas law: (1) the existence of a contract, (2) plaintiff's performance under the contract, (3) defendant's breach of the contract, and (4) resulting damages.[37]   The factual allegations of the Complaint, taken as true and in the light most favorable to Highland, establish each of these elements under applicable law.

**1.**   **The Facts Alleged In The Complaint Establish A Binding Agreement Between Highland And BofA Under The LSTA Standard Terms.**

The LSTA Standard Terms mandate that Highland and BofA had a binding and enforceable contract for the sale and purchase of the Regency Loan.   The Complaint pleads that BofA and Highland entered into at least two prior written trade confirmations that expressly incorporated the LSTA Standard Terms.   And once the parties enter into a trade confirmation under the LSTA Standard Terms, then the LSTA Standard Terms apply to all future par/near par bank debt trades between those parties.   More specifically, paragraph 21 of the LSTA Standard Terms, titled "**Binding Effect**," provides that, once the parties enter into a single LSTA trade confirmation, thereafter each of the buyer and seller "***agrees to be legally bound***" to any other transaction between them with respect to the "assignment, purchase [or] sale" of commercial or

---

[37]   *See JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010); *Rice v. Metropolitan Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth, 2010)(no pet. h.).

bank near par loans "*upon reaching agreement to the terms thereof (whether by telephone . . . electronic messages or otherwise . . .)*."

The Complaint alleges that Highland and BofA reached an agreement as to the terms of the Regency Loan transaction on December 3, 2009.  On that date, the parties reached an agreement as to all "terms" of the trade as defined by the LSTA Standard Terms: (a) trade date, (b) description of the debt, (c) purchase amount, and (d) purchase rate.  Specifically, the Complaint references a December 3rd email sent from Highland to BofA, wherein Highland's employee details the material terms of the transaction and states that "[w]e are now done on this trade subject to agent and borrower consents" and that BofA should "complete trade confirms today."[38]  Under the clear language of the LSTA Standard Terms, and as sufficiently pled in the Complaint, Highland and BofA had a binding contract to settle the Regency Loan trade pursuant to that email from Highland to BofA sent on December 3, 2009.

BofA appears to make two arguments that there was no binding agreement between the parties.  First, BofA asserts that the LSTA Standard Terms allow the parties to renegotiate the terms of their trade prior to the execution of a written trade confirmation.[39]  Second, BofA asserts that it is not bound by the Regency Loan trade because BofA's agent sent a subsequent email to Highland that the trade was "subject to appropriate consents and documentation."[40] Neither of these arguments has merit.

As stated, all parties that execute trade confirmations incorporating the LSTA Standard Terms agree thereafter to be "legally bound" to any subsequent trade between those parties upon

---

[38]     *See* Motion, Ex. A.

[39]     *See id.* at 3-4.

[40]     *See id.* at 12-13.

reaching agreement to the terms of the transaction, irrespective of whether the agreement is made by phone call, email or otherwise.[41]   Although BofA is correct that paragraph 21 of the LSTA Standard Terms permits the parties to vary the LSTA Standard Terms by mutual agreement, ***the reservation of non-industry standard terms must be made at the time of the phone call or email when the parties agree to the trade terms***.   If parties were allowed to demand material non-industry standard terms in the final written confirmation—as BofA asserts—then the parties would not be "legally bound" to the agreement reached in their initial phone call or email. BofA's interpretation contradicts the plain language and very purpose of paragraph 21 of the LSTA Standard Terms.   BofA's reference to paragraph 10 of the LSTA Standard Terms also fails to support the proposition that trade terms are subject to at-will modification by any of the parties.   Paragraph 10 merely indicates that a counterparty returning an executed trade confirmation may *request* changes or modifications to the transaction therein.

Further, BofA cannot escape liability on the Regency Loan trade by pointing to its subsequent email to Highland stating that the contract was "subject to appropriate consents and documentation."   As an initial matter, under the LSTA Standard Terms, BofA and Highland reached a binding contract before BofA ever sent its email on December 3, 2009.   Accordingly, the email is of no consequence to the enforceability of the parties' agreement.   Moreover, under industry standard practices, all bank debt trades are subject to the consent of the borrower that issued the debt.   Indeed, the email from Highland to BofA unequivocally accepting BofA's offer clearly states that the transaction is "subject to agent and borrower consents," reflecting this

---

[41]     In 2002, the New York legislature amended the New York Statute of Frauds to remove bank debt trades from the general requirement that agreements be in writing, comporting with industry standard practices under the LSTA Standard Terms.  *See* N.Y. Gen. Oblig. Law § 5-701(b)(2)(i) (2002) ("for the assignment, sale, trade, participation or exchange of indebtedness or claims relating thereto arising in the course of the claimant's business or profession (including but not limited to commercial and/or bank loans . . .")).

truism that the assignment of an interest in bank debt is typically subject to the consent of the borrower or the agent.[42]   But as clearly set forth in the LSTA Standard Terms, even if the borrower or its agent does not consent to the transfer of the debt, the LSTA Standard Terms still require the trading parties to settle the transaction as a ***participation*** rather than an ***assignment***. The lack of borrower's (or agent's) consent does not negate the parties' obligation to settle the economic benefits of the trade.   And, while the LSTA Standard Terms contemplate the execution of a written trade confirmation, the execution of the written confirmation is not a condition precedent to the enforceability of the trade.   BofA's email stating that the settlement of the transaction is "subject to appropriate consents and documentation" is, at most, a reaffirmation of industry practices under the LSTA Standard Terms.

> **2.     The Facts Alleged In The Complaint Establish A Binding Agreement Between Highland And BofA Under New York Common Law.**

The LSTA Standard Terms contain a choice of law provision that all contracts made pursuant to those terms are governed by the law of the State of New York.   The Complaint alleges that Highland and BofA made an enforceable contract under the LSTA Standard Terms. Accordingly, Highland provides the following analysis of contract formation under New York law.

> **a.     Highland And BofA Had A Binding Contract Under New York Law.**

Highland has sufficiently pled that BofA entered into a binding agreement to settle the Regency Loan trade under applicable principles of New York law.   All transactions under the LSTA Standard Terms are governed by the law of the State of New York.[43]   According to the

---

[42]       *See* Motion, Ex. A.

[43]       *See* LSTA Standard Terms, ¶ 21.

well-pled facts of the Complaint, BofA and Highland had a binding contract under New York law.

First, as set forth in Section B.1, *supra*, the email and/or telephonic agreement between BofA and Highland on December 3, 2009 established a binding contract under the plain language of the LSTA Standard Terms.  No additional written agreement was necessary or a precondition to the enforceability of the parties' trade.  Thus the Court is not required to engage in any additional analysis of common law elements of contract formation.

Even if, however, the Court gives credence to BofA's factual contention that the parties' contemplated a written memorialization of the agreement, "the mere intention to commit the agreement to writing will not prevent contract formation prior to execution."[44]  New York law holds that parties can be bound by a preliminary agreement "despite the fact that a more formal or elaborate writing has yet to be produced."[45]  The four factors to determine whether a preliminary agreement is enforceable are: (1) whether there is an expressed reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the contract have been agreed upon; and (4) whether the agreement at issue is the type of contract usually committed to writing.[46]  Under the well-pled allegations of the Complaint, each of these four factors establishes a binding preliminary contract under New York law.[47]

---

[44]   *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1986).

[45]   *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005).

[46]   *Id.*

[47]   Federal courts applying New York law have developed a nomenclature for "Type I," and "Type II," preliminary agreements.  Type I agreements are binding without any additional conditions to enforcement.  Type II agreements are not themselves binding, but give rise to a duty to negotiate the remaining open

First, as stated in the Complaint, at the time Highland accepted BofA's offer to sell the Regency Loan on December 3, 2009, BofA reserved no non-industry standard terms to be included in any written trade confirmation.[48]  BofA's subsequent email to Highland stating that the transaction was "subject to appropriate . . . documentation" does not express a reservation not to be bound in the absence of a written contract, but is merely a restatement of standard industry practice that a trade confirmation—incorporating standard industry terms—be executed prior to closing the trade.  The written confirmation is not, under industry practice, a condition precedent to enforcement of the parties' agreement.  The Court, on a motion to dismiss, cannot accept BofA's interpretation of this email in light of Highland's assertions regarding the meaning of such email.  Second, Highland partially performed under the contract by exchanging standard trade confirmation documentation and attempting to close on the trade.[49]  Third, Highland and BofA agreed on all material terms of the transaction: trade date, description of the debt, purchase amount and purchase price.[50]  Finally, established industry standards do not require a subsequent written contract to enforce a phone or email agreement for the sale of near par bank debt.[51]

The allegations of the Complaint establish that BofA and Highland had a binding and enforceable preliminary agreement to settle the Regency Loan trade, even if the parties contemplated execution of a subsequent written trade confirmation.  Regardless, the question of

---

terms in good faith.  *See, e.g., Brown*, 420 F.3d at 154-58.  Recently, the Court of Appeals of New York approved the federal courts' reasoning in this line of cases, but stated that the strict classification of "Types" was not "useful."  *IDT Corp. v. Tyco Group,* 918 N.E.2d 913, 917n.2 (N.Y. 2009).  The federal line of cases, therefore, appears to have been approved by New York's highest court, absent the Type I & II nomenclature.

[48]    *See* Complaint, ¶ 20-21.

[49]    *See id.*, ¶ 21.

[50]    *See id.*, ¶ 20.

[51]    *See id.*, ¶ 15.

the parties' intent is determinative of contract formation and is a fact-intensive effort that requires a court to "look to the words and deeds of the parties which constitute objective signs in a given set of circumstances."[52]   The parties' intent is thus an issue of fact that cannot be determined on a motion to dismiss under Rule 12(b)(6).

> ### b.    At A Minimum, BofA Breached Its Duty To Negotiate The Final Settlement Terms in Good Faith.

The allegations of the Complaint sufficiently establish that, even if Highland and BofA did not have a binding contract to settle the Regency Loan trade, BofA had a duty to negotiate any remaining terms of the agreement in good faith.   New York law recognizes two types of preliminary agreements: (1) binding and enforceable preliminary agreements, and (2) preliminary agreements that give rise to a duty to negotiate any open issues in "good faith," even if the agreement itself is not binding.[53]   Five factors are relevant to determine whether a preliminary agreement gives rise to a duty to negotiate in good faith: (1) whether the intent to be bound is revealed by the language of the agreement, (2) the context of the negotiations, (3) the existence of open terms, (4) partial performance, and (5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions.[54]   Once established, the duty of good faith "bar[s] a party from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not confirm to the preliminary agreement."[55]

At a minimum, Highland has alleged sufficient facts to establish that BofA had a duty of good faith to negotiate any open terms to the Regency Loan trade.   First, Highland asserts that the parties' communications and the context of the negotiations established an intent to be bound

---

[52]    *Winston*, 777 F.2d at 80 (citation and quotation omitted).

[53]    *See Brown*, 420 F.3d at 153.
[54]    *Id.* at 157.

[55]    *Teachers Ins. and Annuity Assoc. v. Tribune Co.*, 670 F.Supp. 491, 498 (S.D.N.Y. 1987).

to the Regency Loan trade.   Although BofA's Motion to Dismiss disputes Highland's characterization of these issues, the parties' intent underlying the communications and negotiations is, at best, a question of fact that cannot be decided on a motion to dismiss.  Second, Highland and BofA reached an agreement as to all material terms of the trade.  Third, Highland partially performed under the parties' agreement by attempting to finalize the trade confirmations and close the purchase.  Finally, as alleged in the Complaint, industry standards under the LSTA Standard Terms do not require a final written agreement as a condition precedent to a binding and enforceable oral or email contract.  All of the relevant factors weigh in favor of a finding that BofA had a good faith duty in negotiating any open terms of the Regency Loan trade.

Highland has also sufficiently pled facts that establish that BofA breached its duty to negotiate in good faith.  BofA's Motion to Dismiss asserts that Highland's allegations made on "information and belief" are insufficient to survive a Rule 12(b)(6) motion to dismiss.  BofA's argument is patently incorrect.

The Complaint asserts that, upon information and belief, during the course of negotiations to close the Regency Loan trade with Highland, BofA became aware that the Regency Loan would pay off at 100% of par.[56]  Highland's belief is based on the fact that BofA is a large institutional purchaser and seller in the bank debt market, and it is thus reasonable to believe that BofA became contemporaneously aware that the Regency Loan would be paid at 100% of par.  (The Regency Loan did, in fact, pay off at 100% of par.)[57]  As further alleged in the Complaint, upon information and belief, because BofA became aware that the Regency Loan would rise in value, BofA walked away from the trade so as to be able to capture the profit for

---

[56]    *See* Complaint, ¶ 22.

[57]    *Id.*

itself.[58]  Highland's belief is based upon the fact that BofA is a for-profit corporate entity and presumably acts in its own financial self-interest.

Highland asserts the foregoing facts on information and belief because the knowledge and motivation of BofA and its agents can only be learned through formal discovery in this litigation.  Highland had no independent means of verifying these facts prior to initiating litigation.  Moreover, Highland's beliefs are reasonable inferences from available information. The Complaint adequately alleges facts to establish that BofA did not negotiate the closing of the Regency Loan trade in good faith.

### 3.    The Facts Alleged In The Complaint Establish A Binding Agreement Between Highland And BofA Under Texas Common Law.

The Complaint alleges sufficient facts to establish a binding contract under Texas law. The Complaint principally asserts that the agreement between Highland and BofA expressly incorporates the LSTA Standard Terms that are governed by New York law.  Even assuming the application of Texas law, however, Highland and BofA reached a binding and enforceable contract.

A contract is enforceable under Texas law when it is definite in its terms and the parties agree upon the material terms.[59]  Even if a contract expressly states that it is "subject to legal documentation," the agreement is nevertheless binding and enforceable if the parties intended to be bound by the preliminary agreement.[60]  The issue of the parties' intent as to the initial agreement is a question of fact under Texas law.[61]

---

[58]     *Id.*

[59]     *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)("In a contract to loan money, the material terms will generally be: the amount to be loaned, maturity of the loan, the interest rate, and the repayment terms.").

[60]     *See Foreca, S.A. v. GRD Dev't Co.*, 758 S.W.2d 744, 746 (Tex. 1988)("The evidence as to the intent of the parties is disputed. ***More important, the 'subject to legal documentation' language is not conclusive on***

The Complaint plainly alleges that Highland and BofA reached an agreement on all material terms of the Regency Loan trade.[62]   The Complaint also alleges sufficient facts to infer that the parties intended to be bound by the initial trade agreement, irrespective of the execution of a subsequent written trade confirmation.[63]   Lastly, the issue of the parties' intent at the time of the agreement is, at a minimum, a disputed question of fact that cannot be decided on a Rule 12(b)(6) motion to dismiss.

### 4.   The Facts Alleged In The Complaint Establish That BofA Breached Its Agreement.

BofA's Motion makes the puzzling assertion that the Complaint fails to allege any breach of the contract between Highland and BofA.[64]   The Complaint, however, sets forth clear and unambiguous facts that establish BofA's breach of the parties' contract.

The Complaint alleges that BofA and Highland entered into a binding agreement on December 3, 2009 whereby BofA agreed to sell to Highland the amount of $15,500,000 of the Regency Loan at a price of 93.5% of par.[65]   At the time the parties agreed to the material terms of the trade, BofA did not reserve any non-industry standard terms to be included in the final trade confirmation.[66]   Accordingly, BofA was required, pursuant to the LSTA Standard Terms and industry practice, to close the transaction under standard terms.[67]

---

*intent to contract*.")(emphasis added); *H.L. Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972).

[61]   *Foreca*, 758 S.W.2d at 746.

[62]   *See* Complaint, ¶ 20 (date, description, amount and price).

[63]   *See id.*, ¶¶ 12, 14-20.

[64]   *See* Motion, pp. 13-14.

[65]   *See* Complaint, ¶ 12.

[66]   *Id.*, ¶¶ 14 & 20.

BofA breached the agreement to settle the trade by impermissibly demanding that Highland agree to additional, non-industry standard terms as a condition to BofA's closing the transaction and transferring the Regency Loan.[68]   The facts of the Complaint are more than sufficient to establish BofA's breach of the binding trade contract with Highland.

## C.   <u>Highland Has More Than Sufficiently Pled Facts To Establish A Claim For Promissory Estoppel.</u>

The Complaint alleges facts to prove a claim for promissory estoppel.  The elements of a cause of action for promissory estoppel are essentially the same under both New York and Texas law: (1) a promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) injury sustained in reliance on the promise.[69]

The Complaint plainly alleges that BofA made an unambiguous agreement to settle the Regency Loan trade in the amount of $15,500,000 of debt at a price of 93.5% of par.[70] Moreover, according to standard practices in the bank debt trading industry, the parties are expected to rely upon the initial oral or email agreement as a binding contract to settle the trade.[71]  Highland's reliance upon BofA's promise was thus reasonable and foreseeable.  And, as alleged in the Complaint, the parties may not insert any additional non-industry standard terms as a condition to closing the trade, ***unless those non-industry standard terms are expressly***

---

[67]     *Id.*, ¶ 20.

[68]     *Id.*, ¶¶ 14 & 29.

[69]     *See Cyberchron Corp. v. Calldata Sys. Dev't, Inc.*, 47 F.3d 39, 44 (2d Cir. 1995)(New York law); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

[70]     *See* Complaint, ¶ 12.

[71]     *Id.*

*reserved at the time of the initial phone call or email*.[72]  BofA failed to reserve any non-industry standard terms at the time of the agreement, and only later attempted to require Highland to agree to material non-industry standard conditions before BofA would settle the trade.[73] Highland relied upon BofA's promise to its detriment by not seeking a substitute seller for Regency debt and tying up $15,500,000 in capital that would have otherwise been deployed. Highland has plainly stated a claim for promissory estoppel.

D.     **Highland Will Amend The Complaint To Remove The Managed Funds As Party Plaintiffs.**

As stated in the Complaint, Highland entered into a contract with BofA to purchase the Regency Loan for distribution and allocation to the Managed Funds (as defined in the Complaint).  BofA's Motion to Dismiss challenges the standing of the Managed Funds to prosecute the claims at issue in this case.  Upon review of BofA's assertions, Plaintiffs and BofA have agreed to stipulate to dismiss the Managed Funds as plaintiffs in this proceeding. Concurrently with the filing of this Response, Plaintiffs are filing an *Agreed Stipulation of Dismissal as to Certain Plaintiffs*, dismissing the Managed Funds without prejudice.  Highland is also filing its *Motion for Leave to File First Amended Complaint*.  The Motion for Leave requests this Court's permission to file a First Amended Complaint that removes the Managed Funds as party plaintiffs.  Highland believes that the agreed dismissal of the Managed Funds cures any objections that BofA raises insofar as the standing of the parties in this case.

---

[72]     *Id.*, ¶¶ 20-21.

[73]     *Id.*

## IV.     CONDITIONAL REQUEST FOR LEAVE
## TO AMEND THE COMPLAINT

Highland respectfully submits that the Complaint is more than sufficient to withstand scrutiny under a Rule 12(b)(6) motion to dismiss.  If, however, this Court finds that there are any pleading deficiencies in the Complaint, Highland requests leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a).[74]  Leave to amend a party's pleading "shall be freely given when justice so requires."[75]   In making that determination, the trial court may consider such factors as "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment."[76]

Leave to amend would be appropriate under the circumstances.  Concurrently with the filing of this Response, Highland is filing its *Motion for Leave to File First Amended Complaint* to add factual allegations that have been adduced upon further investigation of Plaintiffs' claims. The pending First Amended Complaint will be the first amendment of Highland's pleadings in this case, as the current Complaint is Plaintiffs' *Original Petition* that was filed in the State Court of Dallas County, Texas.  Any amendment is not sought for delay and would not prejudice the defendant, in that the parties have just begun to exchange written discovery and no depositions have been scheduled in the case.  Highland thus requests conditional leave to amend the Complaint to the extent this Court finds any pleading deficiencies.[77]

---

[74]     *See, e.g., Whitmire v. Victus Ltd. T/A Master Design Furn.*, 212 F.3d 885, 889 (5th Cir. 2000).

[75]     Fed. R. Civ. P. 15(a).

[76]     *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 268 (5th Cir. 2004).

[77]     This Response shall be filed on January 18, 2011.  The current *Amended Scheduling Order* in this proceeding requires parties to file motions to amend the pleadings by January 18, 2011.  *See* Docket # 10. Under the circumstances, it is unclear whether Plaintiff must also seek leave to amend the Scheduling

## V.    CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that BofA's Motion to Dismiss be DENIED in all respects, and for such other and further relief to which Plaintiffs may be entitled.  Alternatively, to the extent this Court finds that any arguments contained in the Motion to Dismiss have merit, Plaintiffs respectfully request leave of court to amend their active Complaint to cure any deficiencies.


DATED:  January 18, 2011

Respectfully submitted,

REID COLLINS & TSAI LLP
4301 Westbank Drive
Suite B-230
Austin, Texas 78746
(512) 647-6100 Telephone
(512) 647-6129 Facsimile


By:/ s/ C. Randall Carr
    William T. Reid, IV
    Texas Bar No. 00788817
    wreid@rtclegal.com
    C. Randall Carr
    Texas Bar No. 24012391
    rcarr@rtclegal.com
    Sumit R. Shah
    Texas Bar No. 24072337
    sshah@rtclegal.com

*Attorneys for Plaintiffs*

---

Order to file an amended complaint to cure any defects found by this Court on a motion to dismiss.  *See, e.g., S&W Enter., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535-35 (5th Cir. 2003).  In any event, Plaintiff asserts that the circumstances justify leave of court under each of Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure.

## <u>CERTIFICATE OF SERVICE</u>

On the 18 day of January, 2011, I electronically submitted the foregoing document with the clerk of the court for the United States District Court, Northern District of Texas, using the electronic case filing system with the court.  I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure.

<u>/s/ C. Randall Carr</u>
C. Randall Carr