## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:10-CV-1632-L** |
| **BANK OF AMERICA, NATIONAL ASSOCIATION,** | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Bank of America's Motion to Dismiss, filed December 27, 2010. After carefully reviewing the motion, briefing, pleadings, and applicable law, the court **grants** Defendant Bank of America's Motion to Dismiss and **dismisses with prejudice** Plaintiff Highland Capital Management, L.P.'s ("Plaintiff") claims for breach of contract and promissory estoppel.

## I.    Factual and Procedural Background

Plaintiff brought this lawsuit against Defendant Bank of America, National Association ("Defendant") alleging claims for breach of contract and promissory estoppel.[1] The action was originally filed in the 191st Judicial District Court of Dallas County, Texas, and subsequently removed by Defendant to federal court on August 20, 2010, based on diversity jurisdiction.

---

[1] Pursuant to a January 18, 2011 stipulation by the parties, the only remaining plaintiff in the case is Highland Capital Management, L.P. The following plaintiffs were voluntarily dismissed: Tunstall Distressed Opportunities Fund, L.P. f/k/a Dugaboy, L.P.; Highland Credit Opportunities CDO, Ltd.; Longhorn Credit Funding, LLC; Highland Offshore Partners, L.P.; and Tunstall Distressed Opportunities Master Fund, LP. The arguments raised in Defendant's Motion to Dismiss as to these parties are therefore moot.

Accordingly to Plaintiff's pleadings, the parties negotiated and reached an agreement in December 2009 regarding a transaction related to a bank debt trade.  Although the alleged agreement was not reduced to writing and was negotiated via a number of e-mails and telephone calls, Plaintiff contends that the parties agreed to all material terms of the transaction.  Plaintiff therefore contends that the resulting trade was final, binding and not subject to further revision or negotiation by Defendant.  As explained herein, Plaintiff's belief in this regard is based in large part on its assertion that the transaction was governed by industry standard, as well as the Standard Terms and Conditions for Par/Near Par Trade Confirmations published by the Loan Syndications and Trading Associate, Inc. ("LSTA Standard Terms").

On December 27, 2010, Defendant moved to dismiss Plaintiff's contract and estoppel claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff requested leave on January 18, 2011, to amend its pleadings.  Defendant did not respond to Plaintiff's motion for leave but stated in its reply in support of the pending motion to dismiss that Plaintiff's "proposed changes are futile and do not result in a different conclusion; dismissal remains appropriate . . . ." Doc. 23.  The court therefore granted Plaintiff's motion for leave, and Plaintiff filed its First Amended Complaint ("Complaint") on July 14, 2011.  Neither party requested to supplement its briefing as to Defendant's Motion to Dismiss, although Plaintiff's Complaint was filed several months after briefing on Defendant's motion was complete.  Accordingly, the court decides Defendant's Motion to Dismiss in light of Plaintiff's amended pleadings.

## II.     Standard for Rule 12(b)(6)—Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517

F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

(internal citations omitted). While a complaint need not contain detailed factual allegations, it must

set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a

complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks,

citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the

complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm

Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area

Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*,

197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the

complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,

498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss

are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

      The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

      "If the interpretation of a contract is at issue, a court is 'not constrained to accept the allegations of the complaint in respect of the construction of the Agreement,' although all contractual ambiguities must be resolved in the plaintiff's favor." *Banks v. Correctional Servs. Corp.*, 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Because contract construction is generally decided as a matter of law, interpretation of a contract is generally suitable for disposition on a motion to dismiss for failure to state a claim upon which relief can be granted. *Reinhardt v. Wal-Mart Stores, Inc.*, 547 F. Supp. 2d 346, 353 (S.D.N.Y. 2008) (quoting *Revson v. Cinque & Cinque*, 221 F.3d 59, 66 (2d Cir. 2000), and *OBG Tech. Servs. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 514 (D. Conn. 2007)).

**Memorandum Opinion and Order – Page 4**

III.    Analysis

A.    Breach of Contract

Defendant contends that Plaintiff's Complaint fails to allege adequately the existence of a valid, enforceable contract and breach of the alleged contract.  Because the LSTA Standard Terms state that they are governed by New York law and both parties acknowledge that Plaintiff's claims are governed by New York law, the court considers only whether Plaintiff has stated viable contract and promissory estoppel claims under New York law, even though the parties cite Texas law in the alternative.  In any event, the result is the same, regardless of which law the court applies.

1.    New York Contract Law

Under New York law, an unambiguous contract is construed as a matter of law. *Metropolitan Life Ins. Co. v. RJR Nabisco Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).  A contract is unambiguous if it "has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (citation omitted).  Courts must "give effect to [an unambiguous] contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993).  The terms of a contract are "not made ambiguous simply because the parties urge different interpretations."  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).  If a contract is subject to more than one reasonable interpretation and requires resort to extrinsic evidence of the parties' intent, the interpretation of the contract's meaning becomes a question of fact. *Consarc Corp.*, 996 F.2d at 573.  In interpreting a contract, the court gives effect to the contracting parties' intentions and reasonable expectations by

attributing the "fair and reasonable meaning" to the words of the contract with the goal of reaching a "practical interpretation of the expressions of the parties." *Metropolitan Life Ins. Co.*, 906 F.2d at 889.

Although a court may not consider extrinsic evidence in interpreting a contract, under New York law, it may consider extrinsic evidence such as trade usage or practice in determining whether a contract exists. *See Baii Banking Corp. v. Atlantic Richfield Co.*, No. 86 Civ. 6651 (JFK), 1987 WL 14124, at *2 (S.D.N.Y. 1987). Unlike tort liability, contractual liability requires mutual consent by the parties. *Teachers Ins. & Annuity Assoc. v. Tribune Co.*, 670 F. Supp. 491, 497 (S.D.N.Y. 1987). "It is fundamental to contract law that mere participation in negotiations and discussions does not create [a] binding obligation, even if agreement is reached on all disputed terms." *Id.*

### 2.    The Parties' Contentions

Plaintiff's contract claim is based on its assertions that Defendant agreed in the latter part of 2009, via a number of e-mails and telephone communications, to sell to Plaintiff $15,500,000 of a Regency Hospital loan ("Regency Loan") at a price of 93.5 percent of par. Plaintiff contends that Defendant breached the agreement to sell the Regency Loan by demanding additional conditions to its performance that were not standard in the industry and inconsistent with the agreement reached by the parties. Plaintiff maintains that the e-mail and telephone communications between the parties were sufficient to create a valid, enforceable contract even though the agreement was not memorialized in writing.

Plaintiff's assertion in this regard is based on its contention that the parties' agreement was subject to LSTA Standard Terms. According to Plaintiff, the LSTA Standard Terms apply to the transaction at issue because Defendant entered prior transactions in which it was agreed that the

LSTA Standard Terms would apply to future transactions between the parties.  Plaintiff contends that the LSTA Standard Terms represent the standardization of longstanding industry practices in the trading of par/near par bank debt and allow for trades to be consummated via e-mail and other correspondence.

Additionally, under applicable industry practices, Plaintiff contends it is customary for the parties to reach a binding and enforceable trade by either telephone or e-mail.  Based on the Handbook of Loan Syndications and Trading, Plaintiff asserts that "[a]lthough the parties may later execute a written trade confirmation setting forth the terms of the trade, the written agreement is never a condition precedent to the creation of a binding contract."  Pl.'s Compl. 7, ¶ 15.  Additionally, "the parties are [not] free to negotiate additional terms or conditions to close the trade" in conjunction with the subsequent execution of a written trade confirmation after agreement as to the material terms of the trade is reached.  *Id.*  Neither party submitted a complete copy of the handbook relied on by Plaintiff, but the following excerpt from the handbook is quoted in Plaintiff's Complaint:

> While the confirmation is the first step in closing a trade, it is not the first step in making a trade.  The trade is actually made orally between two market participants representing a seller and a buyer.  Since October 2002, with an amendment to the New York State Statute of Frauds, ***loan trades done orally are binding contracts, so long as the material terms of the contract have been agreed upon.*** . . . Since a trade is binding as soon as the parties agree to the material terms, it is crucial that traders be prepared and have a good handle on exactly what they are selling or purchasing.

Pl.'s Compl. 7, ¶ 14.

Defendant disputes that the LSTA applies to the Regency Loan transaction because the prior transactions that allegedly gave rise to the application of the LSTA involved Banc of America

Securities, not Defendant.  For purposes of its motion to dismiss, however, it acknowledges that the court must take Plaintiff's factual allegations as true.  Defendant contends that Plaintiff's contract claim fails even if the LSTA applies because the LSTA contemplates and allows for the inclusion of terms other than the LSTA Standard Terms.  For support, Defendant points to a section of paragraph 21 of the LSTA Standard Terms quoted in Plaintiff's Complaint: "By execution of a Confirmation incorporating by reference the Standard Terms and Conditions, each of Buyer and Seller agrees to be legally bound to any other transaction between them . . . ***subject to all the other terms and conditions set forth in any confirmation relating to such transaction, or as otherwise agreed*** . . . ."[2]  Def.'s Mot. 3.

Defendant also direct the court's attention to paragraphs 22 and 10 of the LSTA Standard Terms.  Paragraph 10 contemplates and allows for the exchanging of documents and "requested changes."  Def.'s Mot. 4; Def.'s App. 012.  Paragraph 22 states, "In case of any conflict between the terms of the Confirmation and these Standard Terms and Conditions, the Confirmation shall govern and control."  *Id.*

Defendant contends that Plaintiff's Complaint contains a number of conclusory statements and legal conclusions that do not constitute factual allegations for purposes of a Rule 12(b)(6) analysis; however, neither party disputes the events that occurred in conjunction with the Regency Loan transaction.  Instead, they dispute the legal significance of those events and the language contained in their e-mails and the LSTA Standard Terms.  For example, neither party disputes that

---

[2] Defendant also submitted a complete copy of the LSTA Standard Terms as Exhibit C to its Motion to Dismiss.  Because the LSTA Standard Terms are central to Plaintiff's claims and referenced and quoted throughout Plaintiff's Complaint, the court considers the LSTA Standard Terms in ruling on Defendant's Motion to Dismiss.

after discussing the terms of the trade during several telephone calls on December 3, 2009, the

parties exchanged e-mails that same day.   The parties disagree, however, regarding the legal

significance of an e-mail from Defendant that states: "Pat, please have the appropriate person contact

Jerry Wilson . . . Jerry will handle the closing for Bank of America.   Pat, *just to restate this is*

*subject to appropriate consents and documentation*."   Def.'s App. 004; *see also* Pl.'s Compl. 4.

Plaintiff takes the position that the "subject to" language in this e-mail should not be considered for

purposes of determining whether a contract was formed because it is merely a restatement of

standard industry practice that a trade confirmation be executed prior to the closing of a trade.

Plaintiff's position downplays the significance of this language in its Complaint as follows:

> In a subsequent email, later in the morning of December 3, 2009, Highland
> confirmed the terms of the agreement reached during the phone call between
> [Highland and Bank of America].   Highland's email restated its acceptance of [Bank
> of America's] prior offer to sell $15,500,000 of the Regency Loan at a price of
> 93.5% of par.   Pursuant to a return email that same day, [Bank of America]
> confirmed the parties' agreement, stating only that it was "*subject to appropriate*
> *consents and documentation*."

Pl.'s Compl. 4, ¶ 10 (emphasis added).   Defendant, on the other hand, contends that the "subject to

appropriate consents and documentation" language in its e-mail confirms that, contrary to Plaintiff's

assertion, the parties had not yet completed their negotiations and did not agree to be bound absent

further consents and documentation.   According to Defendant, similar language in an earlier e-mail

from Highland further establishes that the transaction at issue and related negotiations were not

complete.   Def.'s App. 002 ("We are now done on this trade *subject to agent and borrower*

*consents*.   Please complete trade confirms today . . . .").[3]

---

[3]  Both of the December 3, 2009, e-mails referenced in Plaintiff's Complaint were submitted and
attached as Exhibits A and B to Defendant's Motion to Dismiss.   Def.'s App. 002-003.   Because Plaintiff
contends that these e-mails form the basis of the parties' agreement and Plaintiff's claims, the court considers

### 3.      Application of the Law to the Facts Pleaded by Plaintiff

As a preliminary matter, the court notes that Plaintiff's heavy reliance on industry practice is misplaced.  While industry practice can be considered in determining whether a contract was formed, it cannot create an intent to be bound when the parties' intentions as expressed in their communications indicate otherwise.  *Tri-County Motors, Inc. v. American Suzuki Motor Corp.*, 301 Fed. App'x 11, 12 (2d Cir. 2008); *see Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (language of the agreement is the "most important" factor in determining intent to be bound).

Based on the unambiguous language in the LSTA Standard Terms, the court determines it did not preclude the parties from reaching an agreement that included terms other than the LSTA Standard Terms.  Furthermore, the LSTA Standard Terms make clear that to the extent there is a conflict between those terms and any confirmation, the confirmation for the transaction at issue controls.  Additionally, even though the LSTA Standard Terms allow for negotiation of such trades via telephone, e-mail, and other electronic means, both parties indicated their intent that further consents and documentation were necessary to finalize their agreement with regard to the Regency Loan transaction.  The parties' intent in this regard is clearly set forth in their respective December 3, 2009 e-mails, which both state that the trade was subject to further consents and documentation.  Because the parties' communications do not reveal an intent to be bound absent additional consents and documentation, the court concludes that no contract was created.  Plaintiff has therefore failed to state a claim for breach of contract under New York law upon which relief can be granted.

---

them in deciding Defendant's Motion to Dismiss.

### B.        Preliminary Contract

Plaintiff asserts that even if the parties' conduct did not result in the formation of an enforceable written contract, a "preliminary agreement was formed that required the parties to negotiate the final contractual documents in good faith, "and [Bank of America] materially breached the preliminary agreement by failing to negotiate a settlement of the transaction in good faith." Pl.'s Compl. 12, ¶¶ 31, 33.  Plaintiff contends, as it did in support of its breach of contract claim, that it was not necessary for the parties to execute the trade confirmation documentation in order for there to be a binding agreement.  Defendant responds that the "subject to" language in the parties' e-mails demonstrates that the requisite mutual assent or meeting of the minds for a preliminary agreement was no met.

New York law recognizes two types of binding preliminary agreements.  One is binding while the other merely obligates the parties to negotiate remaining open issues in good faith. *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548-50 (2d Cir. 1998).  Plaintiff pleaded the former type of agreement but argues in its response to Defendant's motion that a binding preliminary agreement was entered, or at a minimum, Defendant breached its duty to negotiate the final settlement terms of the transactions in good faith.  As to both, Plaintiff contends that the parties' communications establish an intent to be bound to the Regency Loan trade.  Plaintiff further asserts that Defendant failed to negotiate the trade in good faith by failing to follow through with the sale of the Regency Loan to Plaintiff at a price of 93.5 percent of par.  Plaintiff contends that Defendant had a change of heart after learning at some point during the parties' negotiations that the Regency Loan would pay off at a higher rate of 100 percent of par.  For the reasons herein

explained, the court determines that Plaintiff's claim fails regardless of the type of preliminary agreement urged.

For support that a binding preliminary agreement exists between the parties, Plaintiff relies on *Winston v. Mediafare Entertainment Corporation*, 777 F.2d 78, 80 (2d Cir. 1985). According to the court in *Winston*, the key in determining whether and when a contract of any kind was entered is the intent of the parties, that is, "whether the parties intended to be bound, and if so, to what extent." *Id.* The *Winston* court explained that:

> Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document. . . . On the other hand, if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract. Because of this freedom to determine the exact point at which an agreement becomes binding, a party can negotiate candidly, secure in the knowledge that he will not be bound until execution of what both parties consider to be final document.

*Id.* One of the factors courts consider in determining whether the parties intended to be bound in the absence of a document executed by both sides is "whether there has been an express reservation of the right not to be bound in the absence of a writing." *Id.* Although neither party in *Winston* expressly reserved the right not to be bound prior to the execution of a document, the court in that case nevertheless determined that a preliminary agreement did not exist because language in the parties' correspondence revealed an intent not to be bound until a contract was executed by both sides. *Id.* at 81. The court therefore determined that the trial court erred in concluding otherwise. *Id.*

The e-mails exchanged by the parties in this case contain reservation language similar to the correspondence in *Winston*. In *Winston*, one of the parties sent a letter that stated any settlement was

"subject to consummation of the proposed settlement." *Id.* A subsequent letter stated that a copy

of "the proposed agreement" was being transmitted to the other party. *Id.* Likewise, both of the

parties in this case acknowledge that they exchanged e-mails that stated that the trade was "subject

to" appropriate consents and documentation. Def.'s App. 003, 004; *see also* Pl.'s Compl. 4, ¶ 10.

Because the parties in their correspondence do not indicate an intent to be bound based on their

correspondence alone and paragraph 21 of the LSTA Standard Terms contemplates and allows for

the execution of a written Confirmation, the court concludes that the parties did not express an intent

to be bound, and thus no binding preliminary agreement was formed. *Winston*, 777 F.2d at 80.[4]

When, as here, the language of an alleged agreement or the parties' correspondence is clear that the

parties did not intend to be bound unless or until a formal agreement was executed, the court need

not go any further in considering the remaining factors to determine whether a preliminary

agreement exists. *See, e.g., Cohen v. Singer*, 4 Fed. App'x 38, 40 (2d Cir. 2001); *Meadow Ridge

Cap., LLC v. Levi*, No. 006594–10, slip op. at 12 (N.Y. Sup. Ct. Nov. 1, 2010).

Plaintiff's argument in the alternative that the parties' communications created a preliminary

agreement to negotiate in good faith also fails based on the facts pleaded in Plaintiff's Complaint

because the LSTA Standard Terms relied on by Plaintiff contain language to address situations in

which one party may have or may learn of information that could affect such party's decision to

---

[4] *See also Cohen v. Singer*, 4 Fed. App'x 38, 40 (2d Cir. 2001) (agreement found not binding because agreement's language characterized it as an agreement in principle "subject to and contingent on" execution of a formal agreement); *Adjustrite Sys., Inc.*, 145 F.3d at 548-50; *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989) ((reference in memorandum to a binding sales agreement to be completed at some future date demonstrated defendant's intent not to be to be bound until that time); *Sabetfard v. Smith*, 760 N.Y.S.2d 525, 525 (N.Y. Sup. Div. 2003) (holding that real estate binder that was subject to the signing of a mutually acceptable contract was not a binding preliminary agreement); *Checkla v. Stone Meadow Homes, Inc.*, 720 N.Y.S.2d 532, 533 (N.Y. Sup. Div. 2001) (same); *Meadow Ridge Cap., LLC v. Levi*, No. 006594–10, slip op. at 12 (N.Y. Sup. Ct. Nov. 1, 2010).

enter the transaction.  Def.'s App. 014, ¶ 15 ("Each of Buyer and Seller acknowledges that (i) the other party currently may have, and later may come into possession of, information regarding the Debt of the obligor(s) that is not known to it and that may be material to a decision to enter in the Transactions.").  This express language is fatal to Plaintiff's assertion that Defendant had an obligation to go through with the Regency Loan trade at 93.5 percent of par despite the fact Defendant became aware of information that the loan would pay at the higher rate of 100 percent of par.  Accordingly, the court concludes that Plaintiff has failed to state a claim upon which relief can be granted based on a preliminary agreement to negotiate a settlement of the transaction in good faith.

### C.      Promissory Estoppel

Defendant contends that Plaintiff's promissory estoppel claim should be dismissed because Plaintiff's factual allegations regarding the promise allegedly made by Defendant and the forseeability of any reliance by Plaintiff are either lacking or insufficient.  Plaintiff responds that its allegations that the parties entered an agreement to settle the Regency Loan trade in the amount of $15,500,000 of debt at a price of 93.5 percent of par satisfy the requirement that a promise was made.  Plaintiff contends that its allegations regarding the applicability of industry practice in the bank debt trading industry support its contention that it "reasonably and substantially relied on [Defendant's] promise to its detriment."  Pl.'s Compl. 13, ¶ 39.

In New York, "the elements of a claim for promissory estoppel are: (1) a clear and unambiguous promise; (2) a reasonable and forseeable reliance by the party to whom the promise is made and (3) an injury sustained by the party asserting the estoppel."  *Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 636 F. Supp. 384, 391 (S.D.N.Y. 1986).  Here, the first

element, the presence of a clear and unambiguous promise, is absent. Neither the parties' communications nor the LSTA Standard Terms include an express promise. While it is possible that in the context of the trade, the parties' communications coupled with the circumstances in which it was made could be a promise, any such promise is far from the clear and unambiguous type required to support a claim of promissory estoppel. *See Baii Banking Corp.*, 1987 WL 14124, at *3.

Moreover, as previously explained, the parties' communications made clear that additional consents and documentation were required to complete the Regency Loan trade. New York courts have held that any alleged reliance by a plaintiff on a promise to enter an agreement is unreasonable if the promise is made subject to obtaining approval or execution of a written agreement memorializing the parties' agreement. *See id.*; *see also G & F Assocs. Co. v. Brookhaven Beach Health Related Facility*, 671 N.Y.S.2d 510, 511 (N.Y. App. Div. 1998); *Trick v. County of Westchester*, 628 N.Y.S.2d 759, 759 (N.Y. App. Div. 1995); *Morse v. Ted Cadillac, Inc.*, 537 N.Y.S.2d 239, 240 (N.Y. App. Div. 1989); *Marion Scott Real Estate, Inc. v. Rochdale Village, Inc.*, No. 15138/07, Slip Op. at 8, 50997(U), (N.Y. Sup. Apr. 28, 2009). Accordingly, Plaintiff's claim for promissory estoppel fails as a matter of law.

## IV.    Amendment of Pleadings

During the pendency of Defendant's Motion to Dismiss, Plaintiff requested leave to file the current Complaint. The court granted leave on July 13, 2011, to allow Plaintiff to state its best case and cure any deficiencies alleged by Defendant. As previously stated, the court relied on the amended pleading to reach its decision. Defendant contends that further amendment would be futile, and the court agrees. Plaintiff can assert no allegations that would alter the legal effect of the

"subject to" language in the parties' e-mails.  Therefore, the defect cannot be cured by further amendment, and any attempt at amendment to state a claim will be futile and will not be permitted.

## V.        Conclusion

For the reasons herein stated, Plaintiff has failed to state a claim for breach of contract (formal or preliminary) and promissory estoppel.  Accordingly, the court **grants** Defendant Bank of America's Motion to Dismiss and **dismisses with prejudice** Plaintiff's contract and estoppel claims.  The court will enter a judgment by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 7th day of November, 2011.

                                                        Sam A. Lindsay
                                                        United States District Judge