**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:10-CV-1632-L** |
| **BANK OF AMERICA, NATIONAL ASSOCIATION,** | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Bank of America, N.A.'s Motion for Leave to File Third Amended Answer (Doc. 67), filed April 2, 2013. Defendant Bank of America, N.A. ("BANA" or "Defendant") requests to amend its answer to satisfy Federal Rule of Civil Procedure 9(c)'s requirement that denial of conditions precedent be pled with particularity. Plaintiff opposes BANA's proposed amendment. After carefully reviewing the motion, briefing by the parties, the record, and applicable law, the court **denies** Defendant Bank of America, N.A.'s Motion for Leave to File Third Amended Answer (Doc. 67).

## I. Factual and Procedural Background

Plaintiff Highland Capital Management, L.P. ("Plaintiff" or "Highland") brought this lawsuit against BANA alleging claims for breach of contract and promissory estoppel.[1] The action was

[1] Pursuant to a January 18, 2011 stipulation by the parties, the only remaining plaintiff in the case is Highland Capital Management, L.P. The following plaintiffs were voluntarily dismissed: Tunstall Distressed Opportunities Fund, L.P. f/k/a Dugaboy, L.P.; Highland Credit Opportunities CDO, Ltd.; Longhorn Credit Funding, LLC; Highland Offshore Partners, L.P.; and Tunstall Distressed Opportunities Master Fund, LP.

originally filed in the 191st Judicial District Court, Dallas County, Texas, and removed by BANA to federal court on August 20, 2010, on the basis of diversity jurisdiction.

Plaintiff alleged in its Original Petition ("Petition") that the parties negotiated and reached an agreement on December 3, 2009, for the purchase and sale of $15 million of a bank debt trade, referred to as the Regency Loan, at a price of 93.5% of par. Although the alleged agreement was not reduced to writing and was negotiated via a number of e-mails and telephone calls, Plaintiff contends that the parties agreed to all material terms of the transaction. Plaintiff therefore contends that the resulting trade was final, binding and not subject to further revision or negotiation by Defendant. Plaintiff's position in this regard is based in part on its assertion that the transaction was governed by industry standards and the Standard Terms and Conditions for Par/Near Par Trade Confirmations published by the Loan Syndications and Trading Associate, Inc. ("LSTA Standard Terms"). Plaintiff alleges that the LSTA Standard Terms were incorporated into the parties' negotiations and agreement as to the Regency Loan as a result of their prior dealings in the Oxbow Trade Confirmation on October 26, 2009, and the Cequel Trade Confirmation entered on November 2, 2009. In addition to these allegations, Plaintiff alleged in paragraph 37 of its Petition that "All conditions precedent to [its] claims for relief have been performed or have occurred." Pl.'s Pet. 9, ¶ 37 (Doc. 1-3). Plaintiff alleges that BANA breached the agreement by refusing to go through with and settle the transaction.

According to Plaintiff, the Regency Loan, as of October 20, 2010, was trading at 100% par, and during the course of the parties' negotiations, BANA became aware of information that would cause the Regency Loan to rise in value. Plaintiff asserts that BANA refused to honor the parties' agreement as to the Regency Loan in order to profit from the increase in value. Plaintiff asserts that

BANA has received all interest payments on the Regency Loan since the date it allegedly breached the parties' contract.

On October 1, 2010, after conducting a Rule 26(f) conference, the parties' filed a Joint Status Report in which they proposed a trial date of October 18, 2011. On October 5, 2010, the court entered the first of several scheduling orders in the case, setting the trial on the court's four-week docket beginning October 3, 2011, and the deadline to amend pleadings was January 3, 2011. On October 15, 2010, BANA moved to continue the October 2011 trial date to November or December 2011 on the grounds that its lead counsel would be out of the country in October 2011 attending an international conference for trial lawyers. On October 19, 2010, the court granted BANA's unopposed motion and entered an Amended Scheduling Order, setting the case for trial on the court's four-week docket beginning December 5, 2011. The court also extended other case deadlines, including the deadline to amend pleadings, to coordinate with the extended trial date. The Amended Scheduling Order extended the pleading deadline to January 18, 2011.

On December 27, 2010, BANA filed a Rule 12(b)(6) motion to dismiss Plaintiff's contract and estoppel claims on the grounds that no agreement was reached because the conditions precedent to the alleged agreement did not occur and the LSTA Standard Terms did not apply to the Regency Loan transaction. In support of its motion, BANA submitted a copy of the LSTA Standard Terms. Although BANA's motion to dismiss was more thorough, it essentially tracked the reasoning in BANA's Statement of the Case that was included in the Joint Status Report previously filed by the parties on October 1, 2010.

On January 18, 2011, before responding to the motion to dismiss, Plaintiff requested leave to amend its pleadings. Defendant did not respond to Plaintiff's motion for leave but stated in its

reply in support of the pending motion to dismiss that Plaintiff's "proposed changes are futile and do not result in a different conclusion; dismissal remains appropriate . . . ." Doc. 23. The court therefore granted Plaintiff's motion for leave on July 13, 2011, and Plaintiff filed its First Amended Complaint ("Complaint") on July 14, 2011. This was the last time Plaintiff amended its pleadings. The July 14, 2011 Complaint is therefore Plaintiff's live pleading in this case.

The allegations in Plaintiff's Complaint regarding the parties' negotiations as to the Regency Loan in 2009 and the LSTA Standard Terms are substantially similar to those previously asserted, except that the amended pleading contains more detail regarding the matters previously alleged by Plaintiff. In addition, Plaintiff again alleges in paragraph 42 of its Complaint that "All conditions precedent to [its] claims for relief have been performed or have occurred." Pl.'s Compl. 14, ¶ 42 (Doc. 24). In its original and amended answers, BANA admitted that the parties had exchanged e-mails and had communications in December 2009 regarding the Regency Loan. It also admitted that it was a party to the Oxbow and Cequel Trade Confirmations and admitted the value of the transactions. BANA otherwise denied, without any specificity, Plaintiff's allegations, including Plaintiff's assertion that all conditions precedent had been satisfied. Although a copy of the LSTA Standard Terms was attached its December 2010 motion to dismiss, BANA stated in its amended answer, filed on July 28, 2011, that it did not have sufficient knowledge or information to admit or deny Plaintiff's allegations regarding the existence or content of the LSTA Standard Terms.

Neither party requested to supplement its briefing as to Defendant's Motion to Dismiss to address the amended and additional allegations in Plaintiff's Complaint. The court therefore ruled on the motion to dismiss in light of Plaintiff's amended pleadings. On November 7, 2011, the court granted the motion to dismiss, and dismissed with prejudice Plaintiff's contract and estoppel claims.

Before ruling on BANA's motion to dismiss, the parties moved, on July 26, 2011, to extend the trial setting and deadlines for discovery and mediation *but did not request to revive and extend the already expired January 18, 2011 pleading deadline*. The court granted the parties' motion and entered a Second Amended Scheduling Order on August 5, 2011, that extended the discovery deadline to December 2, 2011.

After granting BANA's motion to dismiss, Plaintiff filed a notice of appeal on November 30, 2011. On November 1, 2012, the Fifth Circuit entered an order affirming the dismissal of Plaintiff's estoppel claim and reversing the dismissal of Plaintiff's oral contract claim, and remanded the case to this court for further proceedings as to Plaintiff's oral contract claim. On November 7, 2012, the court entered a Third Amended Scheduling Order that set the case for trial in September 2013, but did not extend the discovery deadline.

Subsequently, the parties moved a number of times to extend discovery and other deadlines. On November 15, 2012, the parties moved to extend the deadlines as to experts and noted in their motion that "[t]he deadline modifications requested are well within the Court's requirement that discovery be completed at least four months prior to the trial setting (four months prior to the trial setting is May 3, 2013)." Jt. Mot. to Am. Scheduling Or. Deadlines 2 (Doc. 43). On November 16, 2012, the court granted the parties' motion and entered a Fourth Amended Scheduling Order and extended the expert deadlines. The court also extended the discovery deadline to February 1, 2013. On January 7, 2013, the parties moved again to extend expert, discovery, and dispositive motion deadlines. On January 8, 2013, the court granted the motion and entered a Fifth Amended Scheduling Order that extended the discovery deadline to April 19, 2013.

On January 28, 2013, BANA filed an unopposed motion to file a second amended answer to plead statute of frauds and applicable statutory requirements. On January 29, 2013, the court granted BANA's motion for leave, and BANA filed its second amended answer on January 29, 2013. One month later, BANA moved for summary judgment on Plaintiff's contract claim. The legal and factual grounds for BANA's summary judgment motion are substantially similar to those previously asserted in its motion to dismiss. In support of its summary judgment motion, BANA relies heavily on the declaration of Andrew J. Maidman ("Maidman"), which details his and BANA's counsel's telephone and written communications with Highland regarding the Regency Loan transaction. BANA also submitted a copy of the LTSA Terms and contends that the LTSA does apply to and did not constrain the parties' dealings as to the Regency Loan.

On March 8, 2013, Plaintiff filed an unopposed motion, which was granted by the court, to extend its summary judgment response deadline to April 12, 2013, to conduct additional fact discovery, including several depositions, in order to obtain further evidence necessary to support its response. On April 2, 2013, the parties filed a joint motion in which they advised the court of their agreement to extend the April 19, 2013 discovery deadline to complete expert depositions scheduled for April 23-24, 2013. In light of their agreement, the parties requested the court to extend the deadline to challenge experts to May 9, 2013, and the deadline to compel discovery to May 17, 2013. The court granted the parties' motion and entered a Sixth Amended Scheduling Order on April 3, 2013, that extended these deadlines.

On April 2, 2013, BANA filed its motion for leave to file a third amended answer, which is the focus of this opinion. BANA seeks to amend its answer to satisfy Federal Rule of Civil Procedure 9(c)'s requirement that occurrence or performance of a condition precedent be denied with

particularity. For the reasons herein explained, Plaintiff vigorously opposes the motion because it contends, and BANA appears to acknowledge, that resolution of the motion will affect the parties' respective burdens on the conditions precedent issue and will preclude BANA from denying that conditions precedent for the alleged oral contract were satisfied. The briefing on BANA's summary judgment motion was completed on April 26, 2013, and the motion is therefore ripe. In light of the parties' arguments as to the effect of BANA's motion for leave to file a third amended answer, the court addresses it before ruling on BANA's summary judgment motion. On May 17, 2013, BANA also filed a motion to compel Highland to produce documents and continue the deposition of Highland's corporate representative. The motion to compel focuses on evidence pertaining to Plaintiff's alleged damages that is not relevant to the court's disposition of BANA's motion to amend its answer; however, as herein explained, evidence pertaining to discovery conducted by BANA that was submitted in support of the motion to compel and Plaintiff's production of documents in response to the requested discovery may be relevant to whether BANA exercised diligence in amending or seeking to amend its answer as proposed.

## II. The Parties' Contentions

The parties dispute what standard applies to BANA's motion. The court therefore addresses their contentions as to BANA's motion before setting forth the applicable standard. BANA contends that its proposed amendment will not surprise or prejudice Plaintiff because it has generally denied the occurrence or performance of necessary conditions precedent to the alleged oral agreement that forms the basis for Plaintiff's contract claim. BANA further asserts that the issue of whether conditions precedent in the form of consents were obtained or necessary has been at issue since the inception of this case and was addressed in Plaintiff's July 14, 2011 First Amended Complaint,

BANA's January 29, 2013 Second Amended Answer, BANA's expert report served on March 7, 2013, and the court's November 7, 2011 memorandum opinion and order on BANA's motion to dismiss.

To establish that Plaintiff would not be prejudiced or surprised by the proposed amendment, BANA presented evidence that it advised Plaintiff by e-mail on March 28, 2013, at 8:30 a.m., of its intent to amend its answer to plead with particularity that: "two potential conditions precedent of the alleged oral agreement . . . have not been satisfied specifically, that neither the agent nor the borrower consented to the putative sale of the Regency Loan from BANA to Highland." Def.'s App. 51. BANA also presented evidence that during the deposition of its corporate representative (Maidman) on March 28, 2013, Plaintiff questioned Maidman whether consents were obtained or necessary to complete the transaction. *Id*. 59-62.

Plaintiff opposes BANA's motion to file a third amended answer on the grounds that the request is untimely and BANA has not shown good cause pursuant to Rule 16(b) for its failure to previously satisfy Rule 9(c)'s pleading requirements. Plaintiff contends that BANA has not shown diligence or justified its delay and failure to previously deny the occurrence or performance of conditions precedent with particularity in any of its three answers, even though Plaintiff's Original Petition, filed July 27, 2010, and its First Amended Complaint, filed July 14, 2011, put BANA on notice of the conditions precedent issue. Plaintiff notes that BANA was permitted to and filed its last answer a short time ago on January 29, 2013, but it failed again for a third time to deny with particularity the occurrence or performance of conditions precedent. Plaintiff also contends that BANA has not alleged any new developments that would excuse its delay in seeking the requested

amendment or its failure to previously plead with particularity the denial of conditions precedent when it had the opportunity to do so.

In addition, Plaintiff disputes BANA's contention that it will not be prejudiced. Plaintiff asserts that if BANA is permitted to make the proposed amendment, the burden will shift to Plaintiff to show that conditions precedent to the trade and oral agreement were met, whereas BANA would be deemed to have admitted the occurrence of any conditions precedent not pleaded with particularity and barred from asserting any such defense if not permitted to further amend its answer. Plaintiff further asserts that it would be prejudiced because the trial of this case is set for September 3, 2013, and BANA did not file its motion until after Plaintiff deposed BANA's corporate representative.

In its reply brief, BANA "disputes Highland's assertion that the original January 18, 2011 pleading amendment deadline applies." BANA's Reply 3. According to BANA, its motion to amend is timely because the court's Fifth Amended Scheduling Order, that was entered on January 8, 2013, and in place when it filed its motion for leave to amend its answer, did not include a pleading amendment deadline. Alternatively, BANA contends that even if its motion is deemed untimely, it can show good cause, based on newly-obtained evidence, for its failure to amend its pleadings prior to the pleading deadline.

BANA maintains that Plaintiff will not suffer any prejudice because BANA is not attempting to alter the issues already in dispute in the case or add a new party on the eve of trial; rather, it is merely seeking to supplement its existing denial of the conditions precedent to any alleged oral agreement. On the other hand, BANA contends that if Plaintiff is permitted to avoid BANA's conditions precedent defense based on a pleading technicality, it will suffer a grave injustice because

Plaintiff will no longer be required to prove the existence or nonexistence of conditions precedent, and BANA will be denied the opportunity to present its conditions precedent defense. While BANA denies the existence of any alleged oral contract, it asserts that it should be allowed to argue that the conditions precedent to the alleged oral agreement did not occur if the fact finder determines that an oral contract was formed.

## III. Standard Applicable to BANA's Motion to Amend its Answer

The court's October 10, 2010 Amended Scheduling Order (Doc. 10) included a deadline to amend pleadings on or before January 18, 2011. Pursuant to that order, Plaintiff sought leave on January 18, 2011 to amend its pleadings, which was granted by the court. On November 7, 2011, the court granted Defendant's motion to dismiss, and Plaintiff appealed the court's decision. After the Fifth Circuit remanded this case for further proceedings, BANA sought leave to file a second amended answer, and the unopposed motion was granted by the court. *Although the parties have sought to amend the scheduling orders entered by the court in this case to extend discovery, mediation, expert, and trial deadlines, there have been no other requests to extend the January 18, 2011 pleading deadline set forth in the October 10, 2010 Amended Scheduling Order.* The deadline to amend pleadings therefore expired over two years ago on January 18, 2011, and absent a request by the party amend the scheduling order and January 18, 2011 pleading deadline, there was no need for the court to include the pleading deadline in subsequent orders after expiration of the deadline. Consequently, BANA's April 2, 2013 motion to file a third amended answer effectively requests that the court amend the scheduling order to *resurrect* the pleading deadline that expired on January 18, 2011.

Before the court can modify a scheduling order and grant leave to amend a pleading under Rule 15(a) of the Federal Rules of Civil Procedure, the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b). *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003) ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (citation omitted). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id*. at 536. In deciding whether to allow an untimely amendment, a court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id*. (internal quotation marks, brackets, and citations omitted).

## IV. Discussion

BANA's motion focuses primarily on the Rule 15(a) standard. As noted above, however, the more liberal standard of Rule 15(a) does not come into play until the movant demonstrates that good cause exists under Rule 16(b) by showing that the pleading deadline could not have reasonably been met despite the exercise of diligence. BANA attempts to show in its reply brief that good cause exists under Rule 16(b) by contending that the requested amendment is based on newly-obtained evidence. In this regard, BANA contends that its untimely amendment is justified because "new evidence came to light regarding the strength of BANA's argument for the denial of any conditions

precedent to the alleged oral contract." Def.'s Reply 6. According to BANA, discovery and depositions in this case were delayed due to the appeal of the case and the parties' settlement discussions that occurred after the case was remanded on November 1, 2012. BANA contends:

> Because this case was originally dismissed before a single deposition was taken and before all of the relevant documents had been produced, [it] did not have the opportunity to review Highland's documents in full or attend/conduct any depositions before the alleged January 18, 2011 deadline expired. The only depositions taken in this case to date . . . occurred after Highland was put on notice of BANA's intent to file its motion to amend.

*Id.* 6-7. For support that newly acquired evidence may be sufficient to excuse untimely amendments under Rule 16(b), BANA relies on *The Richards Group, Inc. v. Brock*, No. 3:06-CV-0799-D, 2008 WL 1722250 (N.D. Tex. Apr. 14, 2008).

As noted above, BANA maintains that the parties' dispute regarding conditions precedent has been an issue of contention in the case since its inception and that this supports its motion to amend its answer. Plaintiff similarly asserts that its original and amended pleadings put BANA on notice of this issue when the case was first filed but contends that this fact favors denial of BANA's motion because it shows a lack of diligence on BANA's part in amending timely its answer to plead with particularity the denial of conditions precedent. After carefully reviewing the record in this case, the court agrees with the parties that the dispute regarding conditions precedent for the alleged oral contract has been an issue of contention since the beginning of the case. Plaintiff's original and amended pleadings, the Joint Status Report filed by the parties on October 1, 2010, and the briefing on BANA's December 27, 2010 motion to dismiss are replete with detailed discussion and analysis of the parties' respective positions on the issue of whether conditions precedent, in the form of additional consents and documentation, occurred or were necessary for the formation of an

agreement in light of the parties' alleged prior dealings incorporating the LSTA Standard Terms. Thus, this issue is not a new one; rather, it has been a major issue of contention in the case all along. The court therefore agrees with Plaintiff that this evidence undermines any argument by BANA that it exercised diligence in amending its answer to satisfy Rule 9(c)'s pleading requirement as to conditions precedent. Given the contentious nature of the conditions precedent issue and extensive analysis in the parties' submissions before the January 18, 2011 pleading amendment deadline, the court has difficulty understanding why BANA could not have previously pled, or sought leave before now to plead with particularity its position that the occurrence or performance of conditions precedent necessary for the formation of an agreement did not occur and was not excused by the LSTA Standard Terms.

Although BANA attempts to justify its untimely amendment based on allegedly newly-obtained evidence, its contention in this regard raises more questions than answers. BANA does specify what evidence was acquired during discovery from Plaintiff or when the evidence was produced by Plaintiff. As noted by Plaintiff, BANA was granted leave and filed its Second Amended Answer as recently as January 29, 2013, but it did not plead with particularity the denial of conditions precedent. Thus, it would appear that the evidence alluded to must have been obtained by BANA sometime after January 29, 2013, and before it sought leave on April 2, 2013, to file a third amended answer.

The record, however, indicates that, prior to the appeal, BANA began requesting discovery from Plaintiff soon after the court entered the first scheduling order on October 1, 2010, and by January 6, 2011, it had already served Plaintiff with interrogatories and a second request for production of documents. Def.'s App. to Mot. to Compel 9-24 (Doc. 93-1) (seeking documents and

information pertaining to Plaintiff's alleged damages). Because the discovery deadline was extended a number of times, BANA also had over a year to conduct discovery before Plaintiff appealed the court's November 7, 2011 decision granting BANA's motion to dismiss. The facts of this case are therefore distinguishable from those in *The Richards Group, Incorporated* because the plaintiff in that case was not permitted to conduct any discovery before the pleading deadline. The plaintiff in *The Richards Group, Incorporated* nevertheless sought early on to compel the defendant's deposition and moved for leave to amend its complaint five months after being permitted to conduct discovery. 2008 WL 1722250, at *1-2.

Moreover, BANA fails to explain the significance of the evidence and why it could not have previously denied with particularity the occurrence or performance of conditions precedent before obtaining the alleged evidence. Notably, BANA does not assert in its motion that it became aware of the conditions precedent defense as a result of the allegedly newly-obtained evidence; rather, BANA acknowledges that the newly-obtained evidence merely strengthened and supported its prior position as to conditions precedent.

BANA also appears to take the position, based on the court's reasoning in *The Richards Group, Incorporated*, that, even it obtained the evidence sometime ago, it could not have amended its answer to deny with particularity the performance or occurrence of conditions precedent before the parties began conducting depositions on or after March 28, 2013, the date BANA gave Plaintiff notice of its intent to file a motion for leave to amend its answer. Again, however, BANA does not explain the significance of the document(s) produced by Plaintiff or why it was necessary to depose Plaintiff's witnesses regarding this evidence before amending its answer as proposed. There is also no indication that BANA attempted but was unable to depose Plaintiff's witnesses regarding the

evidence before March 28, 2013. Additionally, that BANA moved to amend its answer *before* deposing Plaintiff's corporate representative Carter Chism on April 19, 2013, leads the court to believe that BANA's deposition of Plaintiff's corporate representative and the information obtained from that deposition was not imperative to amending its answer as proposed. Def.'s Br. in Support of Mot. to Compel ¶ 2 (Doc. 93).

Comparison of the materials filed by BANA in this case before and after the pleading amendment deadline further belies its contention that newly-obtained evidence establishes good cause for the untimely amendment. Based on the court's review of Defendant's Statement of the Case, included in the parties' October 1, 2010 Joint Status Report, BANA's December 27, 2010 motion to dismiss, and its summary judgment motion, filed on February 22, 2013, it appears that the position taken by BANA in its summary judgment motion regarding conditions precedent and the LSTA Standard Terms is virtually identical to the one it took before the January 18, 2011 pleading deadline.

Moreover, except for a couple of documents that appear to have been produced by Plaintiff early on in the discovery phase of the case, all of the evidence relied on by BANA in support of its summary judgment motion is based on information or documents that have been in its control all along.[2] For example, as previously noted, BANA relies heavily on e-mails and other communications to and from its counsel and Maidman, the Senior Vice President of BANA's Special Assets Group, to establish that no agreement was reached as a result of the parties' 2009

---

[2] Many of the e-mails relied on by BANA do not contain any bates stamps numbers whatsoever. The court therefore concludes that BANA did not obtain these e-mails from Highland during discovery, and even for those e-mails that were produced by Highland and bear an HCM bates stamp, the court determines that BANA has been aware of these and the other e-mails it relies on in support of its summary judgment motion since 2009 because all of the communications involve BANA.

negotiations regarding the Regency Loan because the requisite consents and documentation (conditions precedent) necessary to complete the transaction were not obtained. Based on Maidman's declaration, BANA also contends that there was no discussion or agreement, during the parties' 2009 negotiations, to incorporate the LSTA Standard Terms and there was no mention of prior dealings between Highland and BANA for the sale and purchase of other debt.

As further evidence that the LSTA Standard Terms do not apply and were not incorporated into the alleged contract, BANA contends in its summary judgment motion, based on two documents produced by Plaintiff,[3] that the prior dealings or transactions referred to in Plaintiff's pleadings "did not involve Highland as either 'Seller' or 'Buyer' as required under the LSTA for future incorporation of LSTA terms." Def.'s Br. in Support of Mot. Summ. J. 13, n.2; 16; 18. Although it is unclear when BANA obtained these two documents, its contention in this regard is similar to the position that it took in its motion to dismiss. Def.'s Mot. to Dismiss 3, n.3 (Doc. 11) ("According to the Complaint, this 'incorporation' occurred because the LSTA Standard Terms were allegedly used in several earlier transactions purportedly involving Bank of America and Highland that allegedly occurred on October 26 and November 2, 2009. . . . BANA disputes that it entered into agreements with Highland on October 26 and November 2, 2009. Rather, those agreements were entered into by an entirely different entity, Banc of America Securities ('Bas')."). While BANA disputed in its motion to dismiss that it was a party to the Oxbow Trade Confirmation on October

[3] As previously noted, these two documents appear to have been among the documents produced by Highland early in the case in response to BANA's two requests for production of documents that were served on and sometime before January 6, 2011, because the pages of these documents contain relatively low bates stamp numbers HCM 000195-199, whereas the highest number document relied on by BANA in support of its summary judgment motion is HCM 000715. *See* Def.'s Summ. J. App. 74, 94-98. Thus, based on BANA's summary judgment evidence alone, it does not appear that HCM produced a voluminous number of documents in response to BANA's requests for discovery that would have delayed BANA's review of the documents or the information contained in them.

26, 2009, and the Cequel Trade Confirmation entered on November 2, 2009, it admitted in both of its answers that it was a party to these transactions, and it therefore must have had personal knowledge of the transactions. Accordingly, the documents produced by Plaintiff as to these transactions and relied on by BANA in support of its summary judgment motion would not support a finding of good cause under Rule 16(b).

BANA also asserts in its summary judgment motion that, even if the LSTA Standard Terms applied to the Regency Loan, "the LSTA explicitly states that the terms are subject to future trade confirmations relating to the transaction and subject to further negotiation," and that the LSTA therefore did not constrain the parties from varying the terms of any agreement as to the Regency Loan. Def.'s Br. in Support of Mot. Summ. J. 20. Again, this is the same argument that BANA made in its motion to dismiss. Def.'s Mot. to Dismiss 3. In support of motion to dismiss and summary judgment motion, BANA submitted a copy of the LSTA and argued extensively as to its meaning and significance. Maidman also states in his declaration that the LSTA was not discussed or mentioned during the Regency Loan negotiations. The court therefore concludes that the LSTA does not qualify as newly-obtained evidence and would not support a finding of good cause under Rule 16(b).

Accordingly, for this and the other reasons discussed, the court cannot, without further information regarding the matters herein addressed, including the numerous discrepancies noted, conclude that BANA has met its burden of showing that the pleading deadline, despite the exercise of diligence, could not have been reasonably met. BANA has also not shown why it could not have made the proposed amendment to deny with particularity conditions precedent in the three opportunities it had to file amended answers before and after the pleading deadline, including the

answer it filed on January 29, 2013. The court therefore concludes that BANA has not shown that it exercised diligence as required to establish good cause under Rule 16(b) for the proposed untimely amendment to its answer. As diligence has not been established, the court will not consider the other factors to determine whether good cause exists. Further, because BANA has not satisfied Rule 16(b), the court need not reach the parties contentions as to whether BANA can satisfy Rule 15(a).

**V. Conclusion**

For the reasons herein explained, BANA has failed to show that good cause exists for the court to modify its latest scheduling order to allow BANA to file a third amended answer. Accordingly, the court **denies** Defendant Bank of America, N.A.'s Motion for Leave to File Third Amended Answer (Doc. 67).

**It is so ordered** this 23rd day of May, 2013.

Sam A. Lindsay
United States District Judge